GEORGE M. BALL v. T. M. DAVIS.

No. 5152.   Decided June 28, 1929.
(18 S. W., 2d Series, 1063.)

*Quinn & Harley* and *Gaines & Gaines,* for plaintiff in error.

On insufficiency of claimant's itemized statement to fix lien: McClellan v. Haley, 250 S. W., 413; Ferguson v. Ashbell, 53 Texas, 249.

The affidavit and claim were not filed in proper time to fix the lien. Rev. Stats., arts. 5453, 5476; McClellan v. Haley, 237 S. W., 627, 250 S. W., 413.

The lien is established against property not specified in the statute authorizing its creation. Same authorities. Also Moore v. Carey Bros. Oil Co., 269 S. W., 75.

*Covey C. Thompson* and *Bruce W. Teagarden,* for defendants in error.

On lien granted by Constitution: Strang v. Pray, 89 Texas, 525; Farmers and Mechanics Bank v. Taylor, 91 Texas, 78.

Under Article 5452, Revised Statutes of 1925, outside of Constitutional lien, Davis and Morgan have a lien for the value of their labor for erecting any house, building or improvement whatever, and the use of the word "improvement" further on in the same Article does not limit same to the terms used, but merely gives illustrations of what are meant by "improvements whatever," and uses "wells," which necessarily include the casing therein. Trammell v. Mount, 68 Texas, 210; Implement Co. v. Light, 74 Texas, 605; Oriental Hotel Co. v. Griffiths, 88 Texas, 574; Summerville v. King, 98 Texas, 332; Windmill Co. v. Parker, 30 S. W., 365; Lignoski v. Crooker, 86 Texas, 324; Lippencott v. York, 86 Texas, 276; Johnson v. Implement Co., 88 Texas, 505; Padgitt v. Dallas Brick & Construction Co., 92 Texas, 626; Berry v. McAdams, 93 Texas, 431; Cisco Banking Co. v. Keystone Pipe & Supply Co., 277 S. W., 1060; Hardin v. Kellam, 279 S. W., 921; Cisco, etc. Ry. Co. v. Diefenderfer, 278 S. W., 267.

It is respectfully submitted that under Chapter 2, of Title 90, of the Revised Statutes of 1925, appellee has a statutory lien on all the property mentioned, and that he also has such statutory lien on all such property under the provisions of Chapter 3, of Title 90, and under the provisions of Chapter 5, of such title, and under Articles 5503, 5504, 5505 and 5506, giving lien on property repaired, and that he has such a lien, and that under Article 5479, the remedy in Chapter 3 is cumulative, and under all these statutes he has a statutory lien, in addition to his constitutional lien. Hicks v. Faust, 109 Texas, 481; American Type Founders Co. v. Nichols, 110 Texas, 4; Hales v. San Antonio, Uvalde & Gulf Ry. Co., 111 Texas, 434.

The statements of account filed are sufficient even under a strict construction of any article of the statute. They state the days

worked, amount per day, and total, and allow credits. · How could they more completely comply, even with Article 5453, or any other article, even if applicable? Stuart v. Browne, 59 Texas, 466; Pool v. Wedemeyer, 56 Texas, 287; Gillespie v. Remington, 66 Texas, 108; Scholes v. Hughes, 77 Texas, 482; Houston v. Meyers, 88 Texas, 126.

Mr. Chief Justice CURETON delivered the opinion of the court.

This suit was brought by T. M. Davis against G. M. Ball, to recover wages for labor performed by himself and by a co-worker by the name of Morgan, whose claim he held by assignment, and to foreclose a mechanic's or laborer's lien asserted to secure each of the claims on an oil well drilling machine, rig, etc., on the well drilled by them with the machine, together with about 3000 feet of casing, some of which was in the well, and also on the oil and gas leases on which the well was located. The trial court awarded judgment to Davis for $1664.18 with a foreclosure of the liens as prayed for. This judgment was affirmed by the Court of Civil Appeals, and the case is before us by writ of error.

Davis was a driller, and Morgan was his assistant, both having been employed by Ball or his agents. The contracts of employment were verbal, and each of the mechanics, Davis and Morgan, undertook to fix his lien by filing an itemized sworn account in the office of the county clerk, as provided by Revised Statutes, Article 5453. The itemized account of Davis, filed March 25, 1927, was as follows:

"Verified Itemized Account.

"To balance owing on August 27, 1926.........$ 207.00
To 170 days' labor and time from August 27,
    1926, to and including March 22nd, 1927,—
    16 days at $5.00 and 162 days at $10.00 per
    day ................................$1700.00

Total ................................$1907.00
Less credit by cash......................$ 432.82

Balance due affiant......................$1474.18"
The itemization of Morgan's account read:

"Verified Itemized Account.

"To seventy-eight (78) days' labor for George M.
    Ball Oil Company and George M. Ball Holdings
    and George M. Ball—labor done and performed
    by John Morgan, affiant, from June 26th, 1926,
    to December first, 1926, at $5.00 per day.......$390.00
    Less payments made to affiant, credits total......$150.00
                                                      ————
    Balance due this affiant.....................$240.00"

These accounts are clearly too indefinite to constitute compliance with the statute. The Morgan account, last quoted, covers 78 days' work over a period of 157 days, spread through or embraced in six different months, but no one can tell, either from the account or the affidavit which accompanies it, what days the work was actually done, or any other fact or detail which would be of assistance in ascertaining the correctness of the account or when any particular item thereof was due. The Davis account is equally as indefinite. In the first place, it begins with: "To balance owing on August 27, 1926," of $207.00. Neither the affidavit nor the account shows when the work was performed for which this balance was due, nor do they show when it became due. The remaining portion of the account purports to cover 170 (8) days' labor during eight different months, embracing a period of 207 days; but there is nothing to indicate on what days the labor was performed, nor when any particular item of the account accrued or became due.

The statute (Art. 5453) requires the account to be itemized. The term used means that the account must be set out by items. People v. Lowden, 121 N. E., 188. The sufficiency of the itemization must be determined in view of the objects and purposes of the statute. The evident purpose of the statute here involved is to provide the owner of the property with such particulars as will enable him to ascertain whether or not the account is correct, and show the facts necessary to the establishment of a lien, not only for the benefit of the owner, but of third parties as well who may be or might become interested or affected thereby. To accomplish these purposes the account must show the facts required by the statute to establish the lien. Unless the affidavit and account are sufficiently definite to show that labor has been performed, that a sum certain is due therefor, and the date when due, it is insufficient to accomplish the purpose of the statute to show and fix a lien. The general rule is that mechanic's lien statutes imposing involuntary liens upon the prop-

erty of another must be complied with, at least in such a substantial manner as to convey notice to the debtor and third parties who might be interested or affected. 18 Ruling Case Law, p. 926, sec. 57; Ferguson v. Ashbell & Simpson, 53 Texas, 245. The text of Ruling Case Law reads as follows:

"Mechanics' liens being purely statutory, there is no intendment in their favor, and they must show upon their face all the statutory requisites to their validity. They are incipient or inchoate until completed or perfected by compliance with the statute, and are lost utterly if those acts required for their completion be not done in the manner and within the time required by statute. In many cases it is said that a strict compliance with the statute must be shown, but this doubtless means that all the statutory steps must be taken, and that the notice or statement of the lien shall contain all the averments required by the statute."

In the case of Ferguson v. Ashbell, just cited, this Court said:

"In verbal contracts, however, the terms and specifications of the contract and the amount and value of the work and materials furnished, are made *ex parte,* and should be so specific and certain as to advise the owner of the property, other lien creditors, if any, and all persons interested, of the particulars of the demand sought to be enforced, so that if they desire, they may be prepared to contest the same."

We conclude that the accounts of both Davis and Morgan were too indefinite to fix or establish a mechanic's or laborer's lien on the property involved in this litigation. Authorities supra; McClellan v. Haley, 250 S. W., 413, 415; Banner Oil & Gas Co. v. Gordon, 235 S. W., 945.

These accounts must fall for still another reason. Revised Statutes, Article 5453, requires that the itemized account, in order to be effective, shall be filed in the office of the county clerk within thirty days after the account accrues; and Article 5467 declares that when the labor is performed by the day, as in this case, the indebtedness is deemed to accrue at the end of each week. There is some indefinite testimony of Davis, and perhaps others, that the laborers were expected to be paid every fifteen days, but the allegations in plaintiff's petition, and the affidavits filed with the itemized accounts, state that Davis' and Morgan's wages were to be paid so much per day; and we think, under the allegations, in view of the state of the record, the wages were due under the statutory rule. However, the question is of no particular importance whether the wages were

due weekly or every fifteen days. The account of Morgan, which was filed March 25, 1927, for labor which according to the account itself ended December 1, 1926, shows on its face that it was filed more than thirty days after the account or any item thereof was due, regardless of the question as to whether or not the wages were due weekly or every fifteen days. Therefore, the Morgan account was clearly insufficient to fix the lien on the property of the plaintiff in error. R. S., Art. 5453; Van Horn Trading Co. v. Day, 148 S. W., 1129; Nystel v. Gully, 257 S. W., 286; Bell Oil & Refining Co. v. Price, 251 S. W., 559.

The account of Davis was for 170 (8) days' labor "from August 27, 1927, to and including March 22nd, 1927," and was filed in the county clerk's office March 25, 1927. What portion or amount of this account accrued, whether due weekly or at the end of each fifteen days, is within the thirty-day period prescribed by the statute, the account does not disclose; but that the greater portion of it had accrued more than thirty days before the filing of the account is evident, and as to that portion it is clear no lien was fixed. As to the unknown portion which may have accrued at such time that the filing of the account of March 25, 1927, would fix the lien, we think the account entirely too indefinite, as above stated, to fix any lien.

In the case of Nystell v. Gully, cited above, the appellant's petition alleged that the work for the value of which a recovery was sought covered a period from August 1919 to *April 1920*. The itemized claim made the basis of the lien sought to be established was not filed until *April 20, 1920*. The Court of Civil Appeals held the statute was not complied with, saying:

"Article 5622 of Vernon's Sayles' Revised Statutes requires that, in order to fix a mechanic, materialman, or laborer's lien, that the sworn account representing the same should be filed within 30 days from the time the indebtedness accrued; and article 5636, Vernon's Sayles' Revised Statutes provides that, if the labor performed is by the day or week, the indebtedness shall be deemed to have accrued at the end of each week during the time in which the labor is being performed. The basis of the claim for labor as shown by the petition is by the day; therefore the statute was not complied with in that the lien sought to be established was not filed within 30 days after the indebtedness accrued."

On the whole, we conclude that the accounts as filed were insufficient in form and substance to fix a lien under Revised Statutes, Articles 5473, 5476, 5453, etc. The Court of Civil Appeals was of the opinion that Davis not only had a lien under Chapter 3,

Title 90, relating to mechanic's liens on oil and mineral property, but likewise had a lien for the work here done under Chapter 2 of that Title, being the general statute relating to laborer's and mechanic's liens, also under Chapter 5 relating particularly to Farm, Factory, and Store Operatives, and under Articles 5503 to 5505, Chapter 7, Articles specially providing a lien for repair of any article, etc.

Chapter 3 of Title 90, which embraces Articles 5473 to 5475 of the Revised Statutes, was originally enacted in 1917, and deals specially and particularly with the liens of materialmen, artisans, laborers, and mechanics engaged in the oil industry. The Court of Civil Appeals was of the opinion that because Article 5479 declares that these Articles relating specially to oil and mineral property should be cumulative as to rights and remedies given materialmen, artisans, laborers, and mechanics by other laws, that materialmen, artisans, laborers, and mechanics in the oil industry could look to other Chapters of Title 90 for their liens. With this holding we cannot agree. By Article 5473 materialmen, artisans, laborers, and mechanics, for certain services, are authorized to fix liens against certain properties for specified services.

The purposes of the declaration of cumulative effect was not to make other statutory provisions applicable to those covered by the Act itself, but to show that the things for which liens were given by the Act were not intended to nullify other lien statutes in favor of mechanics, laborers, clerks, and others performing services in the oil industry, and materialmen who might furnish material in the oil or mining industry not covered by a special Act.

An examination and comparison of the statutes shows that Chapters 2, 5, and 7 of Title 90 cover many employees and fields of employment in the oil and mining industries not within the limited terms of Article 5473. One illustration will suffice: Clerks, accountants, and bookkeepers in these industries are not included within the protective terms of Article 5473, but they are named in Article 5483. That Chapters 2, 5, and 7 do not cover the subject matter of Article 5473, is shown by the emergency clause of the Act of which that Article is a part. This clause definitely shows the purpose was to supply deficiencies in existing laws, and not to cover subjects already sufficiently defined by statutes then prevailing. This clause declares:

"There being no law protecting laborers and materialmen for labor performed for owners of lands, mines or quarries or owners of leaseholds for oil, gas, pipe lines or rights of way for mining or

quarrying purposes, creates an emergency and imperative public necessity exists that the constitutional rule requiring bills to be read on three several days be and the same is hereby suspended and that this Act take effect and be in force from and after its passage, and it is so enacted." (Acts 1917, pp. 28, 30.)

To say that the existing laws then on the statute books, which are the very laws referred to by the Court of Civil Appeals as being applicable, in addition to the special Act before us, did apply to the subject matter of Article 5473, would be in the face of the legislative declaration that there was no such law then on the statute books. The fact is that at the time of the enactment of the special Act here involved (Chapter 3, Title 90, Articles 5473 et seq.) the oil industry had assumed large proportions in Texas. It was then apparent that it might become, as it has since become, one of the major industries of the State; and it was doubtless the opinion of the Legislature that the interests of those in the business, whether as laborers, mechanics, materialmen, or operators and owners, made it necessary that their rights no longer be made to depend on general statutes, of, to say the least, doubtful construction and indefinite application and meaning; and so, in its wisdom, because of the growing importance of the subject, and because of the number of people engaged in the industry, and the values involved, it enacted the special law to regulate, govern, and control the special subjects named therein; but as to general subjects which might be in the oil industry, as in any other, such as the construction of buildings, liens for accountants, clerks, repair men, etc., leave the general laws, Articles 5452, 5483, and 5503, as they were, applicable then to subjects not covered by Article 5473, and still applicable thereto.

The very purpose of special statutes is to make the law plain and easily ascertainable, and to hold that the special statutes as to the class of labor particularly named in Article 5473 are not exclusive, but that various other statutes of a general nature apply, adds confusion to the subject, and the law becomes a trap, calculated to involve all but the most astute in its toils. No such construction will be given it as to those named and the classes of labor set forth and the lien given in Article 5473.

The trial court and the Court of Civil Appeals both held that the Davis and Morgan claims were secured by constitutional liens, and that any failure to take the necessary steps to fix them was not fatal as between the mechanics or laborers and Ball, the owner.

With this we cannot agree. Section 37, Article 16, of the Constitution reads:

"Mechanics, artisans and materialmen of every class have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said laws."

This Court has held that those coming within the terms of the constitutional provision are not compelled to take any steps to fix the liens as between themselves and the owners. Farmers & Mechanics National Bank v. Taylor, 91 Texas, 78; Strang v. Pray, 89 Texas, 525. However, in this case we think it apparent that the drilling of an oil well is not either the erection or repair of a building. Mulloy v. Humble Oil & Refining Co., 250 S. W., 792. Nor do we think that the setting of casing in an oil well constitutes or makes the casing an "article made." We agree with the opinion of the Court of Civil Appeals in the case of Mulloy v. Humble Oil & Refining Co., 250 S. W., 792. In that case the suit was brought to recover the purchase price of casing and other materials furnished and used in the drilling and completion of an oil well. In addition to the recovery of the purchase price, the plaintiffs sought to establish and foreclose a materialman's lien upon the well and the leasehold estate. No steps were taken to comply with the statutory provisions governing the fixing of liens, but the contention was that, independent of the compliance with the statutory provisions, the materialman had a lien under Section 37, Article 16, of the Constitution, quoted above. The court held that no constitutional lien existed, and that in order for a lien to exist it was necessary that it be fixed under the very Articles of the statutes involved in the present litigation. Concerning the matter, Associate Justice Higgins in part said:

"If an oil well is a 'building' or an 'article' within the meaning of the constitutional provision, then appellee has a lien under the Constitution, and the venue was properly laid in Eastland County. Certainly an oil well is not a building. The word 'article' is of broad significance, but, if an oil and gas well is to be regarded as a mere 'article,' then it would be difficult to imagine an instance of labor done or material furnished which would not fall within the meaning of the term.

"We are of the opinion that such a well is not to be regarded as within the scope of Section 37, Art. 16, of the Constitution,

and that, in order for a materialman to secure a lien upon the same and the land or leasehold estate upon which it is situate, there must be a compliance with Chapter 17, Acts of 1917 (Article 5639a et seq., Complete Texas Statutes 1920, or Vernon's Ann. Civ. St. Supp. 1918)."

It is true that in the case of Moore v. Carey Bros. Oil Co., 269 S. W., 75, the Commission of Appeals, Section "B," in the course of its opinion held that when well casing is put together and cemented in an oil well it was an "article made," and that therefore the laborer performing this service had a lien under the Constitution, without the necessity of fixing this lien under the statutes. We have carefully re-examined this case, and are of the opinion that the conclusion there stated is erroneous. Nor was it necessary that this erroneous conclusion be made the basis of the holding in the case named. We have examined the opinion of the Court of Civil Appeals and the original papers in the case. In an opinion on rehearing Presiding Judge Short of the Commission of Appeals held that the affidavit of Carey Bros. Oil Co., by which they attempted to fix the lien on the casing involved in that litigation, fully complied with the requirements of the statute, and that for that reason, among others, the lien of Carey Bros. Oil Co. attached to the property involved, and they had the right to maintain the suit against Moore and others for conversion. 272 S. W., 440. It is unnecessary to review the facts involved in that litigation, and we make reference to it only to show that the judgment rendered by the Commission of Appeals, affirming the recovery on the part of Carey Bros. Oil Co., was a correct one; and since it was sustainable upon the ground last stated, as to the sufficiency of the affidavit fixing the lien of Carey Bros. Oil Co., we are not bound by the dictum in the opinion to the effect that oil well casing when put together and cemented in an oil well is an "article made" within the meaning of the constitutional provision. The judgment of the Court of Civil Appeals in the Carey Bros. Oil Co. case was affirmed, and this Court merely adopted the judgment rendered by the Commission of Appeals, and did not adopt the opinion, nor the reasons stated by the Commission therefor. The opinion of the Commission of Appeals, however, in so far as the holding above discussed is concerned, is hereby overruled.

The words used in the Constitution are to be given their usual and ordinary signification, unless, of course, they are technical words; or, as the rule is sometimes stated: Since the Constitu-

tion is an instrument adopted by the people generally before it has any vitality, the words employed are to interpreted as the people generally understood them. 6 Ruling Case Law, p. 52, Sec. 47; 12 Corpus Juris, p. 705, Sec. 48; Cox v. Robison, 105 Texas, 426; Williams v. Carroll, 182 S. W., 29. Applying this test to Section 37, quoted above, we are convinced that no one would class a well casing put together and set in a well as an "article made." In this particular instance the casing was set in the well in the usual way, each joint being attached to the other by threads, until the requisite depth was reached; and we are convinced that the common and general understanding of men would not be that in thus setting a casing in a well those engaged in the performance of the duty had "made" a well casing. Under such a construction we should be compelled to say that every time a yardman screwed two pieces of garden hose together he had "made" a garden hose. Screwing the joints of casing together as a part of the process of placing them in an oil well for use is simply using the casing in the manner and way it is made to be used. It is not making anything, but using a thing already made in the ordinary and usual manner, and in fact in the only way it can be used. The well casing was well casing before it was placed in the well, and was well casing afterwards. Nothing has been made in the usual and ordinary meaning of the word "made," but only a use has been made of articles completely manufactured. To say that thus making use of well casing is to make a well casing is too far from the common understanding to be given effect in this case.

The only other basis for holding that the Davis and Morgan claims are secured by a constitutional lien is that they may have repaired some of the machinery or something connected with the drilling of this well. We have examined the statement of facts very carefully, and find nothing in the statement of facts sufficient to support a constitutional lien on the ground that any article connected with the well had been repaired by Davis and Morgan. The affidavits filed for the purpose of fixing the liens do not show that anything was repaired. Davis was the driller, and operated the drilling rig. He does say in his testimony that "when it got out of order I repaired the machine myself." Mr. Morgan testified: "I helped repair the machine." What either of them did, or what machine was repaired, or what part of the machine they repaired, the testimony does not show. In fact, the petition does not allege that they repaired anything. The only testimony with reference to

repairing a machine is that which we have quoted. This fails to show any time consumed in repairing or what in fact was done. Evidently the so-called repairing of the machine was a matter of very small moment, and at most simply minor running repairs incident to the operation of a drilling rig, and of insufficient consequence to merit the attention of the pleader who drew the petition, or to impress the memory of the witnesses with detail. Be that as it may, the evidence wholly fails to disclose the time consumed or any amount of recovery asked for repairs to the machine. It is altogether too indefinite to raise an issue as to a constitutional lien against any of the property involved here. In fact, the petition in this case does not seek a recovery or a foreclosure of a constitutional lien because of repairs to any article.

We have examined the record, and see no reason to reverse the case as to the amount of recovery awarded against Ball, but we have also concluded that the defendant in error had no lien of any sort to secure his debt. It follows from what we have said that the judgments of the Court of Civil Appeals and District Court, awarding a recovery for the amount of the debt due and owing by the plaintiff in error to the defendant in error are affirmed, but that portion of the judgments of the trial court and Court of Civil Appeals which established and foreclosed a lien against the property involved in the controversy are reversed, and judgment as to the lien is here rendered for the plaintiff in error. The judgments of the trial court and Court of Civil Appeals are both affirmed in part and reversed and rendered in part.

*Affirmed in part and in part reversed and rendered.*