SIMON v. POST OAK OIL CO. et al.

No. 14223.

Court of Civil Appeals of Texas. Fort Worth.

July 11, 1941.

Rehearing Denied Sept. 26, 1941.

Marcus Ginsburg and Simon & Wynn, all of Fort Worth, for appellant.

Roberts & O'Connor, of Breckenridge, and J. Rob Griffin, of Fort Worth, for appellees.

BROWN, Justice.

The record discloses that two separate and distinct suits were brought in the district court for the 17th Judicial District of Tarrant County. The first was brought by Julian E. Simon for the purpose of establishing his debt against Post Oak Oil Company and the Estate of J. W. Lane, deceased, and determining the status, or right of priority, of such lien as Simon had to secure his debt; the second was brought by Oil Field Salvage Co. as an appeal from an order of the probate court of Tarrant County, refusing to allow and fix a materialman's lien in favor of said Salvage Co. as against the alleged interests of said J. W. Lane, deceased (and his Estate) in and to two certain tracts of land covered by oil and gas leases, in which it is shown that said Lane, during his lifetime, owned certain interests and on which leases said Salvage Co. claims to have furnished certain materials used by Lane.

The two causes were consolidated and we will not prolong this opinion by naming the many parties to the consolidated suits and by detailing the several pleadings.

The question before us is one to determine whether or not Oil Field Salvage Co. has complied with the statutes (to be referred to hereinafter) and thereby fixed its materialman's lien, and to determine the rights of Simon and the Salvage Co. as to any priority to which one or the other may be entitled.

The lien attempted to be fixed by the Salvage Co. is one provided for in Art. 5473, Vernon's Ann.Civil Statutes, as amended in 1929 by the 41st Legislature of Texas.

Simon being the holder of a deed of trust lien executed by Post Oak Oil Co. and J. W. Lane, after the death of Lane, presented his claim to the administratrix of Lane's estate, same was approved and being filed with the probate court of Tarrant County, the judge thereof approved and allowed the claim as a preferred debt and lien against the properties covered by the said Deed of Trust.

No one has appealed from the order and judgment of said probate court.

Simon therefore seeks to establish, under these facts, his debt against Post Oak Oil Co. and a foreclosure of his said deed of trust lien on the interests owned by said Oil Co. and to foreclose the lien found and fixed by judgment of the probate court, to satisfy the joint debt of said Oil Co. and Lane, deceased.

The contract between the Salvage Co. and Lane was oral and the affidavit made and filed by a member of such partnership for the purpose of fixing the materialman's lien is as follows:

"The State of Texas
"County of Palo Pinto

"Otto Bendorf, affiant, makes oath and says that the annexed is a true and correct account of material furnished to J. W. Lane of Palo Pinto County, Texas, and that the prices thereof as set forth in said accounts hereto annexed aggregating the sum of $2535.02, are just and reasonable, and the same is unpaid, and that all just and lawful offsets, payments and credits known to affiant have been allowed; that said material was furnished to the said J. W. Lane at the time in said account mentioned, under and by virtue of a contract between Oil Field Salvage Company, a copartnership, composed of affiant, Otto Bendorf, and Nate Rosenbaum, Breckenridge, Texas, and J. W. Lane of Levelland, Tex-

as, and that due notice was given by affiant of the material furnished in accordance with the law, and affiant further makes oath and says that he is informed that J. W. Lane was, at the time said contract was made and entered into and said material furnished, the owner of an oil and gas leasehold interest in the tracts of land hereinafter described, and the buildings and appurtenances thereon situated and thereto belonging, including derricks, oil and gas wells, pipe, drilling material and equipment for drilling and operating oil and gas wells upon such leasehold estate including all other buildings, supplies, structures or equipment owned by said J. W. Lane on said leasehold estate, said leasehold estate being described as follows, towit:

"All that certain tract or tracts of land lying and being situated in Palo Pinto County, Texas, in so far as it covers the one fourth undivided interest in the following land: 40 acres of land out of Section No. 1789, T E & L Company land in the R. S. Dalton Ranch, metes and bounds as follows: Beginning 1507 feet west and 770 feet South of the NE Corner of Section 1789 T E & L Company land; Thence West 1320 feet to the NW Corner; Thence South 1320 feet to the SW Corner; Thence East 1320 feet to the SE Corner; Thence North 1320 feet to the SE Corner of this tract the place of beginning, containing 40 acres. Original lease from R. S. Dalton and wife, Millie Dalton, to H. T. Bartley, dated November 9, 1938, and recorded in Volume 180 at page 193 of the Deed Records of Palo Pinto County, Texas; and

"that certain 80 acre tract lying and being situated in Palo Pinto County, Texas and being a part of the T E & L Company Survey No. 1789, Abstract 546, described by metes and bounds as follows: Beginning at the Northeast Corner of the T E & L Company Survey 1789, Abstract 546; Thence west with the north boundary line of the survey 1506.83 feet to a point in said north boundary line; Thence south 2312.75 feet to a point; Thence East 1506.83 feet to a point, said point being in the east boundary line of 1789; Thence North with the east boundary line of said survey to 2312.75 feet to the place of beginning, and recorded in Volume 180, at page 226, Deed Records of Palo Pinto County, Texas;

"and this affiant claims a lien upon said land and leasehold estate and all improvements, material, supplies and equipment as aforesaid and situated on said land.

"(Signed) Otto Bendorf."

The instrument was duly sworn to before a Notary Public.

Exhibit 1 to the affidavit is as follows:

"OIL FIELD SALVAGE COMPANY
"New and Used Oil Field and
Refinery Supplies
"Oil Well Supplies, Line Pipe, Casing,
Fittings, Salvage
"Telephone 232 P. O. Box 812
Night Phone 761
"Breckenridge, Texas

"Sold to J. W. Lane  July 22, 1939
"c/o Motor Fuels Corp. Your Order No.
"Levelland, Texas Our Order No. 2206
        F. O. B.
        Terms: All rentals payable in advance.

"RENTAL

"30-Day Rental from July 23 to August 23
"43 Jts. 959' 8¼" Casing, 32# · @ 12½¢ $119.87
"THANKS."

The other nine exhibits are similar to the one copied and are dated in March, May, June and July, of 1939. One such account bears the notation "(Dalton 2)".

We observe that the quoted affidavit does not state that the materials so furnished the owner Lane were furnished for use upon and used upon either or both of the two oil and gas leases described in the affidavit.

In the affidavit we find the descriptions of two separate and distinct instruments; one covering 40 acres of land and shown of record in one certain volume of the deed records of Young County, giving the date thereof and naming the lessors and lessee, and the other covering 80 acres of land, naming no lessor or lessee, and referring to its recordation at a different page in the same volume, and giving no date.

■ We do not believe that this affidavit is sufficient to show that the materials were furnished by the affiant to Lane to be used on either or both of such oil and gas leases, and we are of opinion that this is a necessary prerequisite to fixing the lien provided for by Article 5473.

This statute plainly states that the lien is given to one who "shall, under contract, * * * furnish or haul material, machinery or supplies used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well * * * for which the same are furnished."

■ It is true that we may look to the contract, if in writing, or to the affidavit,

if the contract be oral, and to the account, that is the basis of the recovery, in construing the statute and determining the rights of the parties, but in the case before us the itemized accounts do not assist us.

■ There are ten such made exhibits to the affidavit and nine of them have no notation of any kind to indicate where the materials were delivered. So far as the affidavit and statements are concerned, they may have been delivered to either or both of the leases, or to neither of them. There is one statement that bears the following notation: "Dalton 2". We do not believe that this bare notation under the record here, with the affidavit before us, is sufficient to designate the lease to which the materials were delivered and on which the lien is attempted to be fixed.

Whether such notation was intended to show the particular lease, or some certain well, is not attempted to be shown.

In Salvage Co.'s pleading the two separate and distinct oil leases are treated as a unit and the attempt is made to show that certain of the materials were used in and on one of the leases and the remaining materials were used in and on the other lease, but that both leases are operated as a unit.

We held in Big Six Oil Co., Inc., v. West et al., 136 S.W.2d 950, writ dismissed with the notation "correct judgment", that the lien attaches only to the particular lease on which the particular work was done and the materials, etc., furnished, and that such lien attaches only to secure the value of such labor, materials, etc., done and furnished on that particular lease.

In the cited case, the contract was in writing and did not describe the leases on which West was employed to perform the labor and over which the suit arose. Under the statute invoked, it was only necessary for West to file his contract of record, and when he brought suit to establish his debt and fix his lien he not only described the leases but his itemized bill of particulars specifically showed the labor done and the charges made on each well and on each separate lease.

We do not believe that the holding in the West case is authority for holding in the instant suit that Salvage Co. has complied with the said statute and therefore fixed its materialman's lien.

■ We are of opinion that in order to fix its lien in this case, where the contract was entirely oral, the affidavit should have stated that the materials were furnished for the designated leases, describing same, and the affidavit should have shown the amount claimed against each separate lease, and the accounts or itemized statements attached as exhibits should have tallied as to the amounts; or the affidavit should have stated that the materials were furnished for the designated leases, describing same, and the aggregate amount claimed, and the accounts or itemized statements attached to the affidavit as exhibits should have shown to which lease the materials were furnished.

■ It is well known that no such lien ever existed until Article 5473 was enacted. Ball v. Davis, 118 Tex. 534, 18 S.W.2d 1063.

■■ It seems obvious to us that, because the statute was enacted not only to give a lien to the furnisher of materials, supplies, labor, etc., but was for the further purpose of putting all third persons, who may care to deal with the properties involved, on notice of the claim for debt and a lien to secure same, the affidavit should be specific not only as to the items going to make up the debt but that it should specifically point out the lease in and on which the materials and supplies were furnished and the labor done.

This seems necessary to us because there being two separate and distinct leases one may have been of much greater value than the other and any third person who contemplated dealing with the owner ought to be put upon notice of the specific claims made against each and every lease.

This is manifestly true with respect to deeds of trust and mortgage liens and we are unable to see where the rule should be relaxed as to the lien provided for by Art. 5473.

What was said by Mr. Justice Funderburk, speaking for the Eastland Court of Civil Appeals, in Clayton et al. v. Bridgeport Mach. Co., 33 S.W.2d 787, writ refused, seems to support our theory of what is necessary to be stated in the affidavit in order to fix the lien.

We do not believe that the affidavit is sufficient to fix the lien sought to be established.

Our conclusions seem to be well supported by the holding of the Supreme Court in Guaranty Savings, Loan & Investment Co. et al. v. Cash, 99 Tex. 555, 91 S.W. 781.

Simon has appealed from the judgment because of insufficient relief.

Because the trial court rendered judgment for the Salvage Company establishing its materialman's lien as against both leases to secure its entire debt, and decreeing same to be superior to the deed of trust lien asserted by Simon, insofar as the same concern the interests owned by the deceased Lane in the two leases mentioned, we are of opinion that the judgment so holding must be reversed and judgment here rendered denying the Salvage Company the lien prayed for, and judgment be here rendered establishing the lien asserted by appellant Simon as superior to the claim of said Salvage Company, and the judgment of the trial court is in all other respects left undisturbed by us.

The judgment is therefore reversed and rendered in part and left undisturbed in part.