### No. 24522.

Court of Criminal Appeals of Texas.

Nov. 30, 1949.

## CRUTCHER, ROLFS, CUMMINGS, Inc., et al. v. BIG THREE WELDING EQUIPMENT CO., Inc.

### No. 12098.

Court of Civil Appeals of Texas. Galveston.

Nov. 3, 1949.

Rehearing Denied Dec. 8, 1949.

Andrews, Kurth, Campbell & Bradley and Homer Mabry, Houston, for Crutcher, Rolfs, Cummings, Inc.

Bates, Cartwright, & Bates, and Reagan Cartwright, Houston, for Kane Trucking Co.

Brian S. Odem, U. S. Atty., and William R. Eckhardt, III Asst. U. S. Atty., Houston, for U. S. of America.

Moody Pearson, Houston, for Humble Pipe Line Co.

Harry W. Freeman, Houston, for Big Three Welding Equipment Co., Inc.

CODY, Justice.

The principal question for determination on this appeal is that of priority of the

liens claimed by the parties to this appeal as securing their claims against the fund of $21,880.39, which was the amount of the sum which remained unpaid by the Humble Pipe Line Company upon its debt to Ladewig Engineering Co., at the time a writ of garnishment was served upon said pipe line company at the behest of the Big Three Welding Equipment Co., Inc. The date of the service of said writ of garnishment was October 29, 1947.

There is no contention here made that there was any irregularity of any. kind in the garnishment proceedings. The Humble Pipe Line Company will hereafter be called the garnishee. The Big Three Welding Equipment Co., Inc., will be called the garnisher; the Ladewig Engineering Co., will be called the debtor. The garnishee seasonably filed its answer to the effect that it was indebted to the debtor in the sum of $21,880.39 for work done by debtor as an independent contractor, and further that there were numerous parties asserting the right to claims against the debtor and against said sum of $21,880.39; and garnishee, in its answer to garnisher's writ of garnishment, asked leave to bring a stakeholder's suit against all claimants to said sum of $21,880.39. The court granted garnishee's prayer to require all claimants to interplead, and permitted the fund to be paid into the registry of the court, and, as will hereafter appear, rendered judgment relieving the garnishee from liability in connection with said sum so paid into court.

The parties named as claimants in the garnishee's stakeholder's suit, with few exceptions, duly filed pleadings interpleading their claims. There is no contention that the amounts of their respective claims were not properly proved, so we will not in every instance state the amount of such claim. (A) The garnisher claimed that its garnishment lien was the prior lien, and that its claim was entitled to be fully satisfied from the fund so paid into court before the fund was subjected to the payment of any other claim. (B) The United States government filed its intervention in said stakeholder's suit, and it alleged that the debtor owed an unpaid balance of withholding tax in a specified amount, and the

United States further alleged that it duly perfected its lien to secure the payment thereof as of November 7, 1947. (C) Appellant, Crutcher, Rolfs, Cummings, Inc. (hereafter called Crutcher, Inc.) asserted its claim for an unpaid balance of $1133.00, for materials and supplies furnished debtor, and which were used in the fulfillment of debtor's contract with garnishee, and Crutcher, Inc., further pled that it had duly perfected a statutory mechanics' and materialmen's lien, and was entitled to have same paid out of said fund, etc. (D) Appellant, Kane Trucking Company, asserted its claim against debtor for $15,092.42, for hauling and trucking services performed in connection with debtor's contract with garnishee. Said trucking company further alleged that it had duly perfected its mechanics' and materialmen's lien to secure the payment of said sum, etc. (E) Parties too numerous to be here named filed claims for services which they claimed to have performed as laborers, and which they asserted were secured by constitutional liens; and other claimants filed claims.

The court tried the case without a jury. It duly rendered judgment against such of the parties as filed disclaimers, and also against such of the parties as made default in the stakeholder's suit. In addition the court rendered judgment:

I. That the garnishee was indebted to debtor, for work done by debtor as an independent contractor, at the time the writ of garnishment was served, in the sum of $21,880.39, and that garnishee has paid. all of said sum into court, and that garnishee was released of all liability in connection with claims against debtor. Garnishee was awarded $500.00 as attorney's fees.

II. That garnisher had established its claim against debtor in the sum of $2,411.69 and that it had acquired a garnishment lien, and said lien was prior to the lien of any and all other claimants, and the court ordered garnisher's claim to be paid out of aforesaid sum which had been paid into the registry of the court.

III. That intervenor, United States, had established its claim against debtor for withholding taxes in the sum of $17,189.07, and has duly perfected its lien to secure

the payment thereof, and that said lien was prior to the liens of all other parties to the suit except garnisher's aforesaid garnishment lien.

IV. That claimants Crutcher, Inc., Kane Trucking Company, Humble Oil Refining Company, etc., have established their respective claims against debtor. But that, since neither the mechanics' and materialmen's and laborers' liens, sought to be fixed, can be fixed either as statutory or as constitutional liens upon the pipe line belonging to garnisheee, nor fixed upon the fund tendered into court, as aforesaid, said parties have no priority right to the fund so tendered into court. But the court ruled that the said parties, referred to in this paragraph, are entitled to share pro rata in the balance of the fund after the claims of the garnisher and the United States have been satisfied. And the court by its judgment did award such balance of the fund, which had been paid into court, on a pro rata basis, among the claimants other than garnisher and the United States government. The Kane Trucking Company was so awarded $886.04; the Crutcher, Inc. $66.56; the Humble Oil and Refining Co. $291.93, etc. And said parties were awarded judgment against debtor for the full amount of their respective claims, but, as indicated, were denied liens to secure payment of same.

The parties to said stakeholder's suit other than the garnisher and garnishee excepted to said judgment, and gave notice of appeal. Crutcher, Inc., and Kane Trucking Company excepted to the action of the court in refusing to establish and foreclose their claimed mechanics' and materialmen's liens and in refusing to hold same to be first, prior and superior liens which were required to be paid out of the fund in the registry of the court, etc. This brings us to a statement of the controlling facts relating to the mechanics' and materialmen's liens:

In June, 1947, the garnishee (the pipe line company) entered into a contract with the debtor (the independent contractor) by which the debtor became obligated to do various things in connection with various portions of garnishee's pipe line, consisting of 8-inch pipe, and which aggregated about fifty miles. The portions of the pipe line affected are located between Groesbeck and Palestine, 15.55 miles thereof being between Gate Plant "C" and Todd Station; 28.03 miles being located between Gate Plant "K" and Fairfield Station; and 6.67 miles being located between Gate Plant "J" and Groesbeck Station. The contract is lengthy, covering some twenty pages of the statement of facts.

Prior to the time the contract was made and performance was had thereunder, the portions of the pipe line system which were the subject of the contract consisted, as a whole, of duplicate or parallel pipe lines, and in some instances, of triplicate pipe lines. For reasons not developed in the evidence, or not pointed out, it became possible and profitable for garnishee to handle the load carried at these portions of its pipe line system by a single pipe line, and in some instances it allowed parallel pipe lines to remain; but apparently allowed no triplicate pipe lines to remain at said portions. The contract related to uncovering, dismantling, reconditioning, racking and loading into cars the aforesaid 50 miles of 8-inch pipe. The pipe, which was removed from said portions, was then transported to other portions of garnishee's pipe line system where it was installed and used.

The appellants, Crutcher, Inc., and Kane Trucking Company were the only parties that have sought to fix mechanics' and materialmen's liens against the garnishee's property. It is not necessary to state the counties in which such affidavits were filed by said appellants, as no contention is made other than as hereinafter stated, that they failed to comply with any of the requirements necessary to perfect mechanics and materialmen's liens, if such liens were here applicable. At least there is no contention that said appellants failed to file the necessary affidavits in the counties where the work of dismantling and cleaning the pipe was performed, and the required notices were also given garnishee, as the owner of the pipe line and right of way, in early December, 1947. The services had been rendered by Kane Trucking Company between July and the middle of September, 1947,

and the last shipments of material were made by Crutcher, Inc., in early September, 1947. And, as stated above, the writ of garnishment was served on garnishee on October 29, 1947, and perhaps it should be added that garnishee filed its original answer and bill of interpleader on November 21, 1947.

The appellants who are prosecuting this appeal, and that have filed briefs are (1) Crutcher, Inc., (2) Kane Trucking Company, and (3) the United States government. The position of Crutcher, Inc., and Kane Trucking Company is the same; they have filed a joint brief; and they will hereafter be referred to as "these appellants" when referred to jointly. "These appellants" predicate their appeal upon six points which are substantially:

Point I. "These appellants" acquired mechanics' and materialmen's liens upon garnishee's pipe line, and upon the right of way thereof, and upon the property covered by the contract, under the undisputed facts.

Point II. "These appellants", having duly perfected their mechanic's and materialmen's liens, were in the position of an assignee of the unpaid amounts due from garnishee under the contract, and "these appellants" should have been the first to be paid out of the funds paid into court by the garnishee.

Point III. (This point is a repetition of what is set out in Points I and II, merely phrased differently.)

Point IV. The contract between the garnishee and debtor being one in connection with the repairing, maintenance and operation of a pipe line, said pipe line and the pipe line right of way was subjected to the mechanics' and materialmen's liens, and the court should have established said liens in favor of said appellants, and ordered same foreclosed, and requires that the sums due "these appellants" be paid them from the money which remained in the hands of the garnishee unpaid under the terms of the contract and was paid into court.

Point V. The court erred in adjudging that the United States government had acquired a tax lien securing its indebtedness which was superior or prior to the me-

chanics' and materialmen's lien of "these appellants."

Point VI. The United States government has no priority with reference to collecting its debt over the other unsecured creditors.

It will be noted that the first four points may be boiled down to the contention that, under the contract between the pipe line company (garnishee) and debtor, mechanic's and materialmen's liens can be established, and further, that under the undisputed facts such liens were fixed in this case; and further, that such liens were first, prior, and superior to the liens of the garnisher and of the United States if, indeed, said garnisher and the United States acquired any liens. It might not be amiss to call attention to the fact that the fund—which was garnished in the garnishee's hands—as indicated above, was sufficient to pay fully the claims of both garnisher and of the United States, wtih a balance left over. The result of such situation is that the garnisher is here indifferent whether its lien or that of the United States be adjudged to be the prior lien, so long as the garnishment lien is adjudged to be superior to the liens of "these appellants", if they are found to have liens. But both the garnisher and the United States vigorously contend that the court's judgment which denied "these appellants" any lien is correct.

Provisions for mechanic's and materialmen's liens are either constitutional or statutory,—there were no mechanic's nor materialmen's liens at common law. And, in Ball v. Davis, 118 Tex. 534, 18 S.W.2d 1063, 1064, 1065, it was said that the general rule is "that mechanic's lien statutes imposing involuntary liens upon the property of another must be complied with, at least in such a substantial manner as to convey notice to the debtor and third parties who might be interested or affected." And the rule of construction is that constitutional provisions creating general liens for mechanics and materialmen are liberally construed but not so with respect to statutory liens. 31 Tex.Jur. 1108. And in no event will such statutory liens be extended beyond the legislative intent. For instance, stat-

utes which create such liens for the construction or repairing of a building, do not apply to the demolition or removal of a building. 29 Tex.Jur. 485 et seq.

In this case, if "these appellants" have succeeded in fixing any mechanic's or materialmen's lien upon the garnishee's pipe line or right-of-way, it could only be because of R.C.S. Art. 5473, Vernon's Ann. Civ.St. art. 5473, the relevant portions of which article will be shortly set out herein. In Ball v. Davis, supra, the supreme court said that it was the evident opinion of the legislature in enacting articles 5473 et seq. (i. e. chapter 3 of title 90 of Revised Civil Statutes) that the great numbers engaged in the oil and gas business "whether as laborers, mechanics, materialmen, or operators and owners, made it necessary that their rights be made no longer to depend on general statutes of, to say the least, doubtful construction and indefinite application and meaning; and so * * * enacted the special law to regulate, govern, and control the special subjects named therein; but as to general subjects which might be in the oil industry, as in any other, such as the construction of buildings * * leave the general laws, articles 5452, 5483, and 5503, as they were, applicable then to subjects not covered by article 5473, and still applicable thereto." See 18 S.W.2d at page 1066. See also, Oil Field Salvage Co. v. Simon, 140 Tex. 456, 168 S.W.2d 848.

The relevant portion of Art. 5473 reads: "Any person * * * materialman * * or mechanic, who shall, under contract, express or implied, with the owner of any land * * * or the owner of any gas pipe line or oil pipe line or the owner of any oil or gas pipe line right-of-way, * * perform labor, furnish or haul material, machinery or supplies used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such * * oil or gas pipe line, shall have a lien on the whole of such * * * oil pipe line * * *, including the right-of-way for same * * * and upon the materials and supplies so furnished or hauled, and upon said * * * oil or gas pipe line * * * for which the same are furnished or hauled, and upon all of the other * *

pipe line and the right-of-way therefor, for which said material and supplies were furnished or hauled or labor performed. * *"

■ It will readily be seen, even from the excerpt of the statute which we have set forth, that it would be difficult to frame more comprehensive and all embracing provisions for mechanics', materialmen's, and laborers' liens. Perhaps the language is not broad enough to include dismantling or destruction of a pipe line. And since statutory mechanics' and materialmen's liens are not liberally construed, it would be necessary to hold any doubtful coverage to constitute no coverage. But a removal of portions of the pipe forming a part of the pipe line to other parts of the pipe line system could not be construed as the "dismantling" or as the "destruction" of the pipe line, where the end result was to leave the pipe line in full operation as a pipe line, at the places where surplus pipe was so removed. A removal of surplus pipe to another part of the system where pipe is needed, is, we think, the operation and maintenance thereof. It is, we think, not only no strained construction, to hold that the language of Art. 5473 is applicable thereto, but we believe that the same constitutes operating, and maintaining a pipe line within the express language and meaning of said article. It will be noted that the statute does not confine the lien to any particular portion of the pipe line which has been benefited by the material, labor and industry of the materialman, mechanic and laborer, but attaches to the entire system of the pipe line, including the right of way.

■■ We hold that Art. 5473 does apply here, and that "these appellants" acquired mechanics' and materialmen's liens under Art. 5473 to secure their claims. The effect of this holding must be to hold that the garnisher did not acquire a garnishment lien which was enforcible as against the mechanics' and materialmen's liens acquired by "these appellants" in virtue of Art. 5473. Whether or not Article 5466, which provides that funds subjected to mechanics' and materialmen's liens shall not be garnished by other creditors "to the prejudice of such sub-contractors, mechanics, laborers or material men", is here made

expressly applicable by the terms of Art. 5479, we need not determine. For it is not disputed that the services and material for which the liens were sought, were furnished and performed before the writ of garnishment was ever issued. And it is well settled that mechanics' and materialmen's liens relate back to the time when the work was performed or the material furnished. Trammell v. Mount, 68 Tex. 210, 4 S.W. 377, 379, 2 Am.St.Rep. 479; 29 Tex.Jur. 558 et seq. The further consequences of holding that "these appellants" acquired mechanics and material liens under chapter 3 of title 90 of Revised Civil Statutes will be discussed further with reference to the rights of the United States government with respect to the fund which was by the garnishee paid into court.

■ The United States contends that the sworn itemized account filed by appellant Kane Trucking Company for record is insufficient to meet the requirements of Art. 5453(3). However, the United States does not point out with respect to what items its complaint applies. The itemization complained of covers some four pages in the statement of facts. In most instances the items specify the number of feet of 8-inch pipe involved, and the price per foot of pipe with reference to the service rendered. In the absence of a more specified complaint, and under the authority of Oil Field Salvage Co. v. Simon, supra, we must hold that the complaint with respect to itemization being insufficient cannot be allowed.

■ The United States further contends that "these appellants" cannot prescribe under Art. 5473 because, so the contention runs, the debtor, Ladewig Engineering Company (the general contractor), and under whose contract they claim, could not itself prescribe under Art. 5473 for a mechanic's and materialman's lien. Since the materialmen and mechanics, by filing the proper affidavits and giving the proper notice, effect an assignment to themselves, as it were, of the debt due from the owner to the general contractor, it would indeed be a powerful argument against the rights of the materialmen and mechanics to have any lien, if the contract was of such a nature that the general contractor could acquire

none. Indeed, Art. 5474 expressly provides for a subcontractors lien, and lien for those performing the contract or furnish material therefor under the subcontractor, and provides for a lien "upon all such property or interest described in the preceding article, including right-of-way, for which said material and supplies were furnished or hauled and labor performed, in the same manner and to the same extent as the original contractor, for the amount due him for material furnished or for such hauling." So if the original contractor could not prescribe under Art. 5473, neither could any one claiming under him.

It appears to be true that the contract does not provide for the debtor to move the pipe (which debtor removed from the pipe line) and install same in the new places where same was installed in the pipe line. But without further discussion, it seems obvious that the entire pipe line was improved. Specifically, the pipe line was made more efficient at the points where the surplus pipe was removed. So we hold that the debtor could have prescribed for the liens under Art. 5473.

The United States bases its contention, that its claim has priority with respect to the sum placed in custodia legis by garnishee, upon the following:

It was undisputed that debtor, as an employer, is liable for the payment of withholding taxes by virtue of Section 1623 Title 26 U.S.C.A., and for taxes for social security by virtue of Section 1600 Title 26 U.S.C.A. The amount of the sum which was adjudged as owing by debtor to the United States, was the total amount of said taxes, plus penalties and interest demanded by the United States in that connection. And, as stated, the court below awarded the United States a lien to secure the payment thereof, second and inferior only to the garnishment lien, awarded garnisher.

The United States makes no contention, of course, that the debtor itself owed the taxes which it was bound to collect for the United States from debtor's employees. Nor does the United States contend that any lien attached ipso facto to the debtor's property to secure the payment of the taxes which by law the debtor was compelled to

collect from its employees and pay over to the United States. The lien claimed by the United States arose in this fashion. The United States filed its assessment list with the collector on November 7, 1947, covering the taxes in question. And on November 10, 1947, the notices were filed with the county clerks of the proper counties. It is the contention of the United States that its lien became perfected on November 10, 1947, and that in no event can it be said that the mechanics' and materialmen's lien became perfected before the sworn accounts were filed and notices given in early December. With respect to the garnisher, the United States contends that its garnishment lien was not perfected until judgment established it.

We will digress at this point to state the position of "these appellants" with respect to the claim of the United States to having acquired a lien, and to its claim that such lien is prior to the lien of "these appellants." First, "these appellants" contend that the money paid into court by garnishee at no time ever came into the possession of debtor, and never became debtor's property, so that when the United States perfected its lien, the unpaid amount due the debtor by garnishee never became subjected to the lien. The contention that the fund in question never became the property of debtor is untenable. The garnishee was obligated to pay the money to the debtor or to the satisfaction of debtor's obligations, and thereby reduce said obligations. Every claimant in this proceeding founds his right to be paid out of said fund upon the unassailable proposition that said fund is an asset of debtor, and subject to be applied to debtor's obligations. Second, "these appellants" deny that statutory mechanics' and materialmen's liens are incipient and inchoate until completed or perfected by compliance with the mechanics' and materialmen's statutes, and are lost utterly if those acts required for their completion are not done in the manner and within the time required by the statutes. Ball v. Davis, 118 Tex. 534, 18 S.W.2d at page 1064, supra. They point out that the Supreme Court has long settled the point that where such lienors do all that is required by law that the lien relates back

to the time that the material was furnished or the services performed. 29 Tex.Jur. 558, supra. It is therefore urged by "these appellants" that, though they did not perfect their liens until in early December, yet when they did, same related back to the dates they furnished material and performed services, the latest of which was in mid-September, 1947, which was prior, of course, to November 10, 1947, when the lien of the United States was perfected.

It is perfectly obvious that, if the Texas mechanics' and materialmen's lien statutes as construed by the Supreme Court of Texas were the supreme law of the land, "these appellants" would here be entitled to have their liens established as binding from and after the time they furnished the material and performed the services for which they here seek recovery. "These appellants" contend that, in a case, United States v. Yates, Tex.Civ.App., 204 S.W.2d 399, which is similar in all material respects, the Beaumont Court of Civil Appeals held that the mechanics' and materialmen's liens prevailed over a lien fixed by the United States against one who was bound to collect withholding and social security taxes, and that the Supreme Court approved the judgment so rendered by the form of their refusal of an application for a writ of error, but did not approve the Beaumont Court's opinion. If such were the case we would feel that we were bound by the doctrine of stare decisis.

However, as we read the Yates case, there the mechanics' and materialmen's liens had been promptly filed for record, and thus perfected before the government's lien for withholding and social security taxes was filed. In the Yates case, however, it was further held that the attachment lien took priority, as of the date the writ was served, over a lien filed by the government for withholding and social security taxes filed subsequently thereto, but before the judgment of the court established and foreclosed the attachment lien. But in the Yates case there was no contention made, so far as the opinion shows, that the debtor was insolvent. The evidence here in our opinion was sufficient to justify the trial court in concluding that the debtor

was insolvent. Title 31 U.S.C.A. § 191, provides: "Whenever any person indebted to the United States is insolvent * * *, the debts due to the United States shall be first satisfied; * * *." This statute was enacted in 1797, and is but an enactment into statutory law of the common law provision that the king was always a preferred creditor. In People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 347, 91 L.Ed. 348, the U. S. Supreme Court held:

"The federal priority is not destroyed by state recording acts any more than by state statutes creating or otherwise affecting liens, if the lien as recorded or otherwise executed does not have the required degree of specificity and perfection. Under the decisions the test is not, and cannot be, simply whether by his taking further steps, the lienor's rights will be enforced against others than the Government.

"The long established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time. These are: (1) the identity of the lienor * * *; (2) the amount of the lien * * *; and (3) the property to which it attaches * * *. It is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity."

■ : We are constrained to hold that the court erred in not holding that the United States had a prior lien and the prior right to receive the payment of its debt out of the fund in custodia legis. We further hold that "these appellants" are entitled to share pro rata in the sum remaining after the United States has been paid. We further hold that the garnisher has the right to participate in the sum, if any remaining, to the full extent of its debt, after "these appellants" have received pro rata shares of the fund. We hold that the unsecured creditors are entitled to share pro rata in the balance remaining, if any. We reverse the judgment of the trial court, and remand the cause to the trial court for it to be there

determined what the pro rata shares the parties, other than the United States, are entitled to, in conformity with this opinion.

The United States, after the time had elapsed for filing its appeal sought in a supplemental brief to enlarge its recovery. "These appellants" moved that such supplemental brief so belatedly filed be struck. Such motion is granted.

The judgment of the trial court is reversed and the cause remanded for further proceedings in conformity with this opinion.

Reversed and remanded.