EOFF v. SKINNER.
No. 12328.

Court of Civil Appeals of Texas. San Antonio.

Nov. 7, 1951.

Rehearing Denied Jan. 9, 1952.

992

Lloyd & Lloyd, Alice, for appellant.

Kemp, Lewright, Dyer & Sorrell, and Tom Lorance, Jr., all of Corpus Christi, for appellee.

NORVELL, Justice.

This is an appeal from an order sustaining a plea of privilege and transferring this cause from the District Court of Jim Wells County to the District Court of Nueces County.

Appellant, Milton Eoff (plaintiff below), contends, (1) that the evidence shows that appellee, A. C. Skinner, maintained a residence in Jim Wells County, and (2) that his suit was maintainable in Jim Wells County under exception 12 of Article 1995, Vernon's Ann.Civ.Stats., as it was one for the foreclosure of a lien against property situated in said county.

Trial was to the court without a jury and before appellant's first contention may be sustained, it must appear that the trial court's implied finding that Skinner did not maintain a residence in Jim Wells County is wholly without support in the evidence or so against the overwhelming preponderance of the evidence as to be clearly wrong.

Although it is well settled that a person may have more than one residence for venue purposes, Kerr v. Davenport, Tex.Civ.App., 233 S.W.2d 197, the evidence, in our opinion, does not compel that conclusion in this case.

From Skinner's testimony, it appears that he has been engaged in the laundry business for about forty years. In 1937 he moved to Corpus Christi and has there operated a laundry since that time. In the spring of 1947, he purchased a ranch containing about 2,000 acres in Jim Wells County. He sold his home in Corpus Christi and moved to the ranch. In the fall of 1947, Mrs. Skinner became ill and was taken to a hospital. She thereafter returned to the Jim Wells County ranch, but remained only until she had gained sufficient strength to go to Hot Springs, Arkansas. From that time on, the Skinners did not live upon the ranch. After the wife returned from Hot Springs, Mr. and Mrs. Skinner occupied an apartment in Corpus Christi, and in the spring of 1949 they purchased a home in said city.

Skinner testified as follows:

"A. My intention when I purchased the home in Corpus Christi (in 1949) was only to use the ranch as a week-end place, for week-end purposes and as a hunting lodge. Just a place to go and spend a week-end occasionally if Mrs. Skinner's health permitted. That is all it has been used for. Last winter I had a few hunters out there. That is all it has been used for.

"Q. It has been your intention to maintain a residence in Corpus Christi? A. Yes, sir.

"Q. Is that correct? A. Yes, sir, I would hardly put that much money in a residence not to have intended living there."

Mrs. Skinner died in 1951, and appellee testified that he intended to make more extensive use of the ranch in the future. His testimony with reference to this matter is as follows:

"A. * * * I expect to spend more time there (on the ranch). I have taken on obligations where I will have to spend more time there. And I am putting more furniture there, and I am having it painted, and I expect to live both in Corpus Christi and here from now on.

"Q. It is not ready? A. No, sir, but I am getting it ready.

"Q. That is your intention? A. Yes, sir.

"Q. You have a very nice home there? A. Yes, sir, a very nice home, and it will be exceptionally nice when I fix it up."

In our opinion the implied finding of the trial court that Skinner at the time

of the institution of the suit and filing of the plea of privilege maintained a residence in Nueces County only, and was not a resident of Jim Wells County, is supported by the evidence. The testimony is reasonably susceptible of the construction that although he intends to do so in the future, he had not as yet carried that intention into effect. He testified that the ranch house was not yet ready for occupancy, but that he was now getting it ready. We think the recent case of Snyder v. Pitts, Tex.Sup., 241 S.W.2d 136, supports this holding. Many authorities are collated therein and it is definitely held that a trial judge's finding upon the question of "residence" apart from "domicile" having support in the evidence is conclusive upon the appellate courts.

We are further of the opinion that venue will not lie in Jim Wells County under exception 12 of Article 1995, Vernon's Stats., which provides that: "A suit for the foreclosure of a mortgage or other lien may be brought in the county where the property or any part thereof subject to such lien is situated."

The present suit was brought by Eoff against Skinner to recover compensation for the drilling of a water well in Jim Wells County. Appellant's controverting affidavit adopted the petition as a part thereof. An account attached as an exhibit to the petition reads as follows:

"A. C. Skinner

in Account with

Milton Eoff

| | |
|---|---|
| Drilling 416 feet hole at $1.25 | $520.00 |
| Air Compressor rental | 33.00 |
| 416 feet 4½" OD casing | 291.20 |
| Slotting 2 joints of casing | 15.00 |
| Hauling casing | 15.00 |
| Cementing well, including cement | 50.00 |
| Installing electric pump | 48.00 |
| Total | $972.00" |

It is asserted, "that under the laws and Constitution of this State, plaintiff is entitled to and has a valid constitutional and statutory lien as well as a laborer's, mechanic's, materialman's and contractor's lien on the above described property to se-cure and enforce payment of the aforesaid indebtedness."

The Constitution of Texas, Vernon's Ann.St., Article 16, § 37, provides that, "Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

It is asserted that as it was necessary to make slots in two joints of casing, a constitutional mechanic's lien is involved. Appellant says: "As a practical matter, casing is slotted so that water may flow from the sands into the casing or well. Then, can it be gainsaid that 'slotted casing' is an article made? Certainly water would not flow through or into the casing or well without the slot! If 'slotted casing' is an article made or repaired, Appellant is entitled to a lien under the Constitution on the *slotted casing* and on *the land on or in which it is* placed because it allows the water to flow into the well and its value to the land is apparent."

While this argument is undoubtedly resourceful, the decision of the Supreme Court in Ball v. Davis, 118 Tex. 534, 18 S.W.2d 1063, 1066, precludes its acceptance. The Supreme Court held that well casing put together and set in an oil well was not an "article made" within the constitutional meaning of the phrase. We do not believe a valid distinction can be drawn between joining and setting casing on one hand and the slotting of casing on the other hand. All of these processes contribute to the end result—the drilling and making of an oil well or a water well. In the case cited, the Supreme Court said: "However, in this case we think it apparent that the drilling of an oil well is not either the erection or repair of a building. Mulloy v. Humble Oil & Refining Co. (Tex.Civ.App.) 250 S. W. 792. Nor do we think that the setting of casing in an oil well constitutes or makes the casing an 'article made.' "

The Supreme Court quoted the following with approval from the opinion of the El Paso Court of Civil Appeals in the cited

case of Mulloy v. Humble Oil and Refining Co., Tex.Civ.App., 250 S.W. 792: " 'If an oil well is a "building" or an "article" within the meaning of the constitutional provision, then appellee has a lien under the Constitution, and the venue was properly laid in Eastland County. Certainly an oil well is not a building. The word "article" is of broad significance, but, if an oil and gas well is to be regarded as a mere "article," then it would be difficult to imagine an instance of labor done or material furnished which would not fall within the meaning of the term. We are of the opinion that such a well is not to be regarded as within the scope of section 37, art. 16, of the Constitution, * * *.' "

Being of the opinion that no reversible error is disclosed, the order appealed from is affirmed.