# MARCH, 1943

## OIL FIELD SALVAGE COMPANY v. JULIAN E. SIMON.

No. 7926. Decided January 27, 1943.
Rehearing overruled March 3, 1943.
(168 S. W., 2d Series, 848.)

*Roberts & O'Connor,* of Breckenridge, and *J. Rob Griffin,* of Fort Worth, for petitioners.

The affidavits and accounts of the Salvage Company being in strict conformance with the statutes and correctly describ-

ing the leasehold estate which consisted of two continguous leases and being filed within the time required by law, was sufficient to fix a materialman's lien on unwritten contract between materialman and the owner of the leasehold estate, and it was error for the Court of Civil Appeals to not so hold. Moore v. Carey Bros. Oil Co., 272 S. W. 140; Bassett v. Bowers, 12 S. W. 229; McInnis v. Brown County Water Imp. Co., 41 S. W. (2d) 741, 47 L. R. A. 261.

*Simon, Wynn & Sanders* and *Marcus Ginsburg,* all of Fort Worth, for respondent Julian E. Simon.

It is obligatory upon one to file a lien for labor or material furnished on oil and mineral property under Article 5473, and one who files a lien under the provisions of Article 5452 and in the form of affidavit contained in Article 5455 does not acquire or establish a lien for labor or materials on oil or gas mineral properties. Ball v. Davis, 18 S. W. (2d) 1063; Banner Oil & Gas Company v. Gordon, 233 S. W. 945; Continental Supply Co. v. Gillespie, 269 S. W. 859.

*McGown, McGown, Godfrey & Logan,* of Fort Worth, filed brief as amicus curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

This appeal involves the validity of a materialman's lien filed by the Oil Field Salvage Company under Article 5473 and 5452 to 5472, inclusive, Vernon's Annotated Civil Statutes. Two separate and distinct suits were brought in the District Court for the Seventeenth Judicial District of Tarrant County. The first was brought by Julian E. Simon for the purpose of establishing his debt against Post Oak Oil Company and the estate of J. W. Lane, deceased, and to determine the status or right of priority of such lien as Simon had to secure his debt. The second was brought by Oil Field Salvage Company as an appeal from the order of the Probate Court of Tarrant County, Texas, refusing to allow and fix a materialman's lien in favor of the Oil Field Salvage Company and against the interest of J. W. Lane, deceased, and his estate, in and to two certain tracts of land covered by oil and gas leases, in which it is shown that J. W. Lane during his lifetime owned certain interests, and on which leases said Oil Field Salvage Company claims to have furnished certain materials used by Lane thereon. The two cases were consolidated. The trial court, without a jury,

in the consolidated cause rendered judgment for Simon for the full amount due him, and for foreclosure of his lien; but held that the lien was inferior to the materialman's lien owned by the Oil Field Salvage Company. Simon appealed to the Court of Civil Appeals, and that court reversed the trial court and held the Oil Field Salvage Company's materialman's lien was invalid, because it did not comply with Article 5473, Vernon's Annotated Civil Statutes. 153 S. W. (2d) 1002. A writ of error was granted by this Court.

During the year of 1939 the Oil Field Salvage Company furnished J. W. Lane a large quantity of material, which was used by him in the drilling and equipping of two oil wells, one of which is located on the 40-acre tract and the other on the 80-acre tract. These two tracts are described in the affidavit filed by the Oil Field Salvage Company which is set out below. The affidavit was made by one of the partners, and was filed in the office of the County Clerk of Palo Pinto County on August 26, 1939. The material parts read as follows:

"Otto Bendorf, affiant, makes oath and says that the annexed is a true and correct account of material furnished to J. W. Lane of Palo Pinto County, Texas, and that the prices thereof as set forth in said accounts hereto annexed aggregating the sum of $2535.02, are just and reasonable, and the same is unpaid, and that all just and lawful offsets, payment and credits known to affiant have been allowed; that said material was furnished to the said J. W. Lane at the time in said account mentioned, under and by virtue of a contract between Oil Field Salvage Company, a co-partnership, composed of affiant, Otto Bendorf, and Nate Rosenbaum, Breckenridge, Texas, and J. W. Lane of Levelland, Texas, and that due notice was given by affiant of the material furnished in accordance with the law, and affiant further makes oath and says that he is informed that J. W. Lane was, at the time said contract was made and entered into and said material furnished, the owner of an oil and gas leasehold interest in the tracts of land hereinafter described, and the buildings and appurtenances thereon situated and thereto belonging, including derricks, oil and gas wells, pipe, drilling material and equipment for drilling and operating oil and gas wells upon such leasehold estate including all other buildings, supplies, structures or equipment owned by said J. W. Lane on said leasehold estate, said leasehold estate being described as follows, towit:

All that certain tract or tracts of land lying and being situated in Palo Pinto County, Texas, in so far as it covers the one fourth undivided interest in the following land: 40 acres of land out of Section No. 1789, T. E & L Company land in the R. S. Dalton Ranch, metes and bounds as follows: Beginning 1507 feet west and 770 feet South of the NE Corner of Section 1789 T E & L Company land; Thence West 1320 feet to the NW Corner; Thence South 1320 feet to the SW Corner; Thence East 1320 feet to the SE Corner; Thence North 1320 feet to the SE Corner of this tract the place of beginning, containing 40 acres. Original lease from R. S. Dalton and wife, Millie Dalton, to H. T. Bartley, dated November 9, 1938, and recorded in Volume 180 at page 193 of the Deed Records of Palo Pinto that certain 80 acre tract lying and being situated in Palo Pinto County, Texas and being a part of the T E & L Company Survey No. 1789, Abstract 546, described by metes and bounds as follows: Beginning at the Northeast corner of the T E & L Company Survey 1789, Abstract 546; Thence west with the north boundary line of the survey 1506.83 feet to a point in said north boundary line; Thence south 2312.75 feet to a point; Thence East 1506.83 feet to a point, said point being in the east boundary line of 1789; Thence North with the east boundary line of said survey to 2312.75 feet to the place of beginning, and recorded in Volume 180, at page 226, Deed Records of Palo Pinto County, Texas; and this affiant claims a lien upon said land and leasehold estate and all improvements, material, supplies and equipment as aforesaid and situated on said land."

Attached to the affidavit were ten different invoices, itemizing the materials furnished J. W. Lane, as follows: One dated March 4, 1939, for $437.10; one dated March 22, 1939, for $70.00; one dated May 23, 1939, for $303.25; one dated May 23, 1939, for $740.25; one dated June 3, 1939, for $298.89; one dated June 10, 1939, for $72.30; one dated June 23, 1939, for $119.86; one dated June 24, 1939, for $343.50; one dated July 6, 1939, for $34.00; and one dated July 22, 1939, for $119.87. Some of the invoices disclose that the Oil Field Salvage Company rented Lane certain materials, and others show an itemized statement of materials sold Lane. In order to show the nature and details of the invoices attached to the affidavit, we copy the material parts of two of such invoices, as follows:

"Breckenridge, Texas, July 22, 1939.

Sold to J. W. Lane      Your Order No.
   Levelland, Texas.    Our Order No. 2206
                  F. O. B.
                  Terms: All rentals payable in adv.

30-Day Rental from July 23 to August 23
    43 Jts. 959' 8-1/4" Casing, 32 Lbs. at 12½¢  $119.87  "

"Breckenridge, Texas, June 24, 1939

Sold to J. W. Lane      Your Order No.
   Fort Worth, Texas.   Our Order No. 2169
                  F. O. B.
                  Terms: net

| | | | |
|---|---|---|---|
| 1 | Geared Eccentric Power, Consisting of: | | |
| | 1 Eccentric, L Countershaft, 1-16' x 34' Bldg. | | |
| | 3 Eccentric Hook on's | | $250.00 |
| 800' | 3/4" Sucker Rods | at 4¢ | 32.00 |
| 4 | Turnbuckles | at $1.25 | 5.00 |
| 6 | Combination Clamps (5-N. R.) | at 1.00 | 6.00 |
| 2 | D. Links (2-N. R.) | at 1.00 | 2.00 |
| 2 | Hook Offs | at 1.00 | 2.00 |
| 2 | C. Links | at .75 | 1.50 |
| 2 | Pumping Jacks | at 12.00 | 25.00 |
| | | | $323.50 |
| | Delivery charges | | 20.00 |
| | | | $343.50" |

The facts are undisputed. R. S. Dalton and wife were the owners of the land in suit, consisting of 120 acres. They executed two separate oil and gas leases on this land, one covering 80 acres, constituting Tract 3, and the other covering the remaining 40 acres, constituting Tract 3, and the other covering the remaining 40 acres, constituting Tract 2. At the time the transaction here involved occurred, J. W. Lane owned the entire leasehold estate in Tract 3 and an undivided 23/32nd interest in Tract 2. A. E. Massey owned an undivided 1/32nd interest in Tract 2, and the Post Oak Oil Company owned the remaining 1/4 interest in Tract 2. The two tracts were contiguous, and were operated by Lane as a singe leasehold. One

well was drilled by Lane on each tract, and both produced oil. These wells are about 500 feet apart.

The Oil Field Salvage Company furnished Lane with certain oil field equipment, which he used to drill and operate these wells. On August 24, 1939, the Company made the foregoing affidavit, stating that it had furnished such material to J. W. Lane; that the aggregate cost of the material was $2,535.02; that the amount was unpaid; and it attached to the affidavit ten exhibits itemizing the material furnished Lane. The affidavit and exhibits were filed with the County Clerk of Palo Pinto County on August 26, 1939.

On September 11, 1939, the Post Oak Oil Company and J. W. Lane executed a promissory note to Julian E. Simon, in the amount of $3,500.00, and to secure the payment thereof executed a deed of trust lien covering grantors' leasehold interests in Tracts 2 and 3, as well as the oil and gas produced from the wells.

J. W. Lane died intestate on October 21, 1939, and his surviving wife, Gladyse H. Lane, was duly appointed by the Probate Court of Tarrant County as administratrix of his estate, and she duly qualified as such. The administratrix approved Simon's claim for the amount due on his note, and the probate court allowed same. No appeal was ever taken from the allowance of this claim. The probate court did not allow the claim filed by the Oil Field Salvage Company for the material it furnished Lane, except as an unsecured claim.

Simon brought this suit against the Oil Field Salvage Company, the Post Oak Oil Company, the Administratrix of the Estate of J. W. Lane, and others, not parties to this appeal, to recover the amount due him on the promissory note signed by Lane and the Post Oak Oil Company, and for foreclosure of his lien. The Oil Field Salvage Company filed a cross action to recover its debt of $2,535.02 against the Estate for the material furnished J. W. Lane and to foreclose its materialman's lien and for a determination of the priority of the two liens. The trial court gave Simon judgment for the full amount of the principal, interest, and attorney's fees, owing on the $3,500 note, with foreclosure of his deed of trust lien, but held that it was inferior to the materialman's lien owned by the Oil Field Salvage Company.

The single question for determination is whether the materialman's lien is valid under Article 5473 and Chapter 2 of Title 90, R. C. S. 1925. Respondent Simon concedes that if it is valid, there is no question but that it is superior to his mortgage lien. The Court of Civil Appeals reversed the trial court, on the ground that the affidavit and accounts filed with the County Clerk of Palo Pinto County by the Oil Field Salvage Company were not sufficient to show what part of the material furnished was used on Tract 2 and what part was used on Tract 3, or whether any of it was used on either tract.

■ Prior to the enactment of Article 5473 in 1917, there was no statutory lien available to laborers and materialmen in the oil and gas industry. Ball v. Davis, 118 Texas 534, 18 S. W. (2d) 1063; Banner Oil & Gas Co. v. Gordon, 235 S. W. 945; 31 Tex. Jur., p. 1103, sec. 359; Thuss, Oil & Gas (2d Ed.), sec. 237. Nor was the constitutional lien provided by Section 37 of Article 16 of the Constitution available to the Oil Field Salvage Company under the facts of this case. Ball v. Davis, supra.

■ Article 5473 provides that a materialman who furnishes the owner of a mineral leasehold estate with machinery or supplies used in drilling, maintaining, or repairing an oil or gas well shall have a lien on such well, the leasehold estate, the building and appurtenances, and upon the materials so furnished.

Article 5476 is as follows:

"The liens herein created shall be fixed and secured and notice thereof shall be given and such liens shall attach and be enforced in the same manner, and the materialman's statement, or the lien of any laborer herein mentioned shall be filed and recorded within the same time and in the same manner as provided for in the preceding chapter. * * *"

The preceding chapter referred to is Chapter 2 of Title 90, and embodies Articles 5452 to 5472, inclusive. Hence the method of filing and fixing the lien created by Article 5473 is the same as that required by Chapter 2. Banner Oil & Gas Co. v. Gordon, 235 S. W. 945; Continental Supply Co. v. Gillespie, 269 S. W. 859; Denny v. White House Lumber Co. (Com. App.), 54 S. W. (2d) 86; Lewis v. Phillips, 131 Texas 313, 114 S. W. (2d) 864.

The Oil Field Salvage Company in attempting to fix its lien complied with Article 5473 and the pertinent Articles of Chapter 2 of Title 90.

Article 5452 prescribes that one who furnishes labor or material under a contract with the owner, "upon complying with the provisions of this chapter shall have a lien on such house, building, fixtures, improvements, * *."

Article 5453 provides:

"The lien provided for in Article 5452 may be fixed and secured in the following manner:

"1. Every original contractor, within four months, and every journeyman, day laborer, or other person, within three months after the indebtedness accrues, shall file his contract in the office of the County Clerk of the county where the property is situated to be recorded in a book kept by the county clerk for that purpose.

"2. If a journeyman, day laborer or other person has no written contract, it shall be sufficient to file an itemized account of the claim supported by affidavit showing that the account is just and correct and that all just and lawful offsets, payment and credits known to affiant have been allowed."

Article 5455 prescribes a form of affidavit that may be used by the materialman or laborer when his contract with the owner or contractor, as the case may be, is not in writing. The contract between the Oil Field Salvage Company and Lane was not in writing. The Company filed with the County Clerk of Palo Pinto County, the county where Tracts 2 and 3 are situated, an itemized account of the materials it furnished Lane, listing each item separately and the price of each, and showing dates of delivery. These accounts were supported by an affidavit properly sworn to before a notary public. The affidavit states that the accounts are just and correct, and that all lawful offsets and credits have been allowed, and that the material was furnished J. W. Lane under a contract between him and the Company. The affidavit copied, word for word, the form of affidavit prescribed by Article 5455. It gives a full and complete description of the two tracts, and no question is raised as to the sufficiency of that description.

■ The term "original contractor" used in the statute means a person furnishing material directly to the owner, and such person has four months in which to file his affidavit and claim. 29 Tex. Jur., p. 536, sec. 66. And it is immaterial whether the contract for material was verbal or in writing 29 Tex. Jur., p. 537, sec. 66.

Respondent Simon attacks the form of the affidavit and itemized accounts on two grounds: (1) Because they fail to show what part of the material was delivered to or used on Tract 2, and what part was delivered to or used on Tract 3, and that since each tract is covered by a separate lease, it was necessary for the affidavit or the itemized accounts to show on which tract each item was placed or used; and (2) because the affidavit and accounts fail to show the due dates of payments for such material.

There is no question about the sufficiency of the description, but the contention is that the affidavit or the accounts should have stipulated which items of material were delivered to Tract 2 and which items were delivered to Tract 3; and that the parties could not treat the two tracts as an entirety and the two leasehold estates as a unit. With this we do not agree. These tracts were contiguous. Lane owned the entire mineral estate in Tract 3 and a 23/32nds interest in Tract 2. He could not, of course, mortgage the undivided interest of his cotenants, Massey and the Post Oak Oil Company, and he did not attempt to do so. True, his cotenants owned a 9/32nds interest in the oil produced, but they are not here complaining, although both were made parties to this suit. There is nothing in the statutes involved which prevented Lane and the Oil Field Salvage Company from treating the two leasehold estates as a unit and operating them as one lease. The testimony shows that at the time this material was bought by Lane he was engaged in drilling and operating the wells on Tracts 2 and 3, and that the two tracts were treated as a unit. The trial court found that, "although the oil and gas leases on tracts 2 and 3 are evidenced by separate instruments, executed in favor of separate lessees at different dates, nevertheless in arriving at the lien rights of the Oil Field Salvage Company the court should consider, and has considered, both leases as one lease."

■ Where different lots or tracts of land are contiguous, and are treated as a single tract, the lien statutes do not require the

affidavit and account to stipulate on which tract the material was delivered or used. Lyon v. Logan, 68 Texas 521, 5 S. W. 72; 2 Am. St. Rep. 511; Guaranty Savings Loan & Investment Co. v. Cash, 99 Texas 555, 91 S. W. 781. Article 5473 did not make it necessary for the Oil Field Salvage Company's affidavit to state that the material, labor, and services furnished to Lane were used in the wells located on Tracts 2 and 3. Trammel v. Mount, 68 Texas 210, 4 S. W. 377; MacAtee & Sons v. House, 137 Texas 259, 153 S. W. (2d) 460; Hemphill v. Gleason (Civ. App.), 272 S. W. 275 (writ refused).

Respondent asserts that the affidavit is insufficient because it fails to expressly state that the material was actually delivered to the leasehold on which the lienor seeks to fix a lien. But the statutes do not require the instrument to expressly state that the material was actually delivered to and used on the property on which a lien is sought. This is a matter of pleading and proof. The Oil Field Salvage Company specially pleaded that the material was delivered to Tracts 2 and 3, and alleged which items were used on Tract 2 and which were used on Tract 3. The judgment of the trial court also stipulated what part of the material was used on Tract 2 and what part was used on Tract 3. It is settled that the statutes give a lien on a parcel or tract of land, or parcel or tracts of land treated as a unit, only for materials that were delivered to or used thereon; and should the affidavit attempt to fix a lien on any other property, it would be invalid as to that property. Lyon v. Logan, 68 Texas 521, 5 S. W. 72, 2 Am. St. Rep. 479; Guaranty Savings Loan & Inv. Co. v. Cash, 99 Texas 555, 91 S. W. 781; Silvey v. Fordyce, 81 S. W. (2d) 714; Merchants & Planters Bank v. Hollis, 37 Texas Civ. App. 479, 84 S. W. 269.

◼ It is contended that the Oil Field Salvage Company did not fix a lien on the property because the affidavit and the invoices were defective, in that the due dates of payment were not expressly stated therein. The affidavit and the invoices must be considered together. The affidavit complies strictly with the form prescribed by Article 5455. The affidavit also states that the materials were furnished to Lane "at the time in said accounts mentioned"; that is, the dates of the accounts were the days the items listed therein were delivered to Lane. The Oil Field Salvage Company in its pleadings treats each invoice as a separate transaction. When we examine the invoices we find each dated as above stated. Whether the date of payment

was the time specified in each invoice, or some future date, the facts contained in the affidavit and eight of the invoices show that the claims were filed within four months after the materials were furnished, and same met the requirements of the law. *Claes v. Dallas Homestead & Loan Assn.*, 83 Texas 50, 18 S. W. 421.

In the case of *Ball v. Davis*, 118 Texas 534, 18 S. W. (2d) 1063, it was held that the affidavit and claim must contain the statement that a certain sum is due *"and the date when due,"* in order to meet the requirements of the statutes. We have carefully examined the statutes, and they do not contain such requirements. Therefore the above holding is incorrect.

A person searching the records would have been apprised of the fact that the Oil Field Salvage Company was claiming a lien against Lane for the materials furnished him, and that it was seeking to establish such lien to secure the payment for such materials by filing such affidavit and invoices. Two of the invoices show that the material mentioned therein was delivered more than four months prior to the time the affidavit and claims were filed, and the evidence shows that the indebtedness for these items accrued when the material was delivered. Consequently these two claims were not filed in time to fix a lien for the items covered by those invoices.

It therefore follows that the action of the trial court in foreclosing the lien to secure the amounts described in eight of the invoices above mentioned, and in denying a foreclosure with respect to the indebtedness for materials furnished to Lane described in the two invoices dated March 4, 1939, and March 22, 1939, should be approved.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered January 27, 1943.

### ON REHEARING.

■ Respondent Simon has filed a motion for rehearing, praying that sub-paragraph (c) of the trial court's judgment be corrected to agree with other parts of the judgment. Both parties agree that one part of the judgment is in conflict with

other parts, but do not agree on which part is incorrect. Petitioner's affidavit fixed a materialman's lien on only one-fourth interest in the leasehold estates in tracts 2 and 3, and therefore his lien is not superior to that of respondent as to the "remaining three-fourths" interest. The trial court's judgment limited petitioner's lien to a one-fourth undivided interest, and ordered the property sold and the proceeds distributed among the various judgment creditors. Sub-paragraph (b) of the judgment provides that the Oil Field Salvage Company shall receive its pro rata share of the one-fourth proceeds derived from the sale of tract 3, the 80-acre tract, while sub-paragraph (c) provides that it shall also participate in the distribution of the "remaining three-fourths" of the proceeds derived from the sale of tract 3. This conflict in the judgment was presented by respondent in the Court of Civil Appeals and in this court by proper assignments.

Inasmuch as petitioner had a lien on only one-fourth of the leasehold interest in tract 3, it is not entitled to a priority over respondent in a greater amount. As petitioner has no lien on "the remaining three-fourths of the proceeds," his right to participate therein is inferior to those of respondent.

Respondent's motion for rehearing is granted. The judgment of this Court entered on January 27, 1943, is amended so as to provide that the judgment of the Court of Civil Appeals is reversed and that of the trial court is reformed to conform with the holdings herein and as reformed is affirmed.

Opinion delivered March 3, 1943.