CENTEX MATERIALS, INC.

v.

**Fred DALTON et al.**

**No. 1173.**

Court of Civil Appeals of Texas, Tyler.

Nov. 16, 1978.

C. Robert Dorsett, Austin, for appellant.

Paul W. Jones, Jr., Austin, Lawrence J. Morgan, Austin, for appellees.

MOORE, Justice.

This is a suit to foreclose a mechanic's lien on three separate tracts of land. Plaintiff, Centex Materials, Inc. (Centex), instituted suit in the form of a sworn account against defendants, Chaparral Industries, Inc. (Chaparral), Fred Dalton, its president, and Henry Masur seeking to recover the sum of $2,422.41 for concrete furnished Chaparral in the construction of residences on three separate lots or parcels of land. The three lots or parcels of land, together with the amount alleged to be due and owing on each lot is described as follows:

1. Lot 5 and Lot 7, Block C, West Ridge Estates, Travis County, Texas, $804.83.

2. Lot 5, Block C, West Ridge Estates, Travis County, Texas, $1,146.60.

3. 406 Wallis, Rollingwood, Travis County, Texas, $470.98.

Centex alleged that it had properly perfected a statutory mechanic's lien on each of the described tracts in accordance with the provisions of Article 5453, et seq., Tex. Rev.Civ.Stat.Ann. (Vernon's Supp.1978), and prayed for a foreclosure on each tract. Each of the defendants answered with a general denial. Defendant, Henry Masur, affirmatively alleged that he purchased Lot 7 from Chaparral without notice of the outstanding indebtedness owed on the lot and was therefore a bona fide purchaser for value. He further alleged that the statutory lien filed by Centex was defective in that it failed to comply with the provisions of Article 5453, supra.

After a trial before the court sitting without a jury, the trial court rendered judgment granting Centex a recovery against Chaparral for the sum of $2,422.41, together with interest and attorney's fees as prayed for in Centex's suit on sworn account. The court also entered judgment foreclosing Centex's mechanic's lien on the property situated at 406 Wallis, Rollingwood Addition (item number 3 above). The

court denied Centex's prayer for a foreclosure on the parcel of land described as Lot 5 and Lot 7, Block C of the West Ridge Estates Addition (item number 1 above), owned by defendant, Henry Masur, and also denied foreclosure on Lot 5, Block C (item number 2 above). A take nothing judgment was rendered against Centex on its suit against Dalton and Masur, individually.

Centex duly perfected an appeal from the judgment, but in so doing limited its appeal only to that portion of the judgment which denied it a foreclosure of its lien on Lot 7, Block C of the West Ridge Estates subdivision, which Masur purchased from Chaparral. Chaparral did not appeal and the judgment became final as to it. Therefore, the only parties to this appeal are appellant (plaintiff below) Centex and appellee (a defendant below) Henry Masur.

We affirm.

■ Appellee Masur failed to file a brief. Neither were findings of fact nor conclusions of law filed by the trial court. Consequently, the record before us consists only of the transcript and statement of facts. Where the record on appeal contains no findings of fact or conclusions of law, the well-settled rule is that the appellate court is required to affirm the judgment rendered by the trial court if it can be sustained on any reasonable theory authorized by law and supported by the evidence. *Bishop v. Bishop,* 359 S.W.2d 869, 871 (Tex.1962); *Sanders v. Republic National Bank of Dallas,* 389 S.W.2d 551, 554 (Tex.Civ.App.—Tyler 1965, no writ history).

Centex contends under its second point of error that the trial court erred in refusing to order a foreclosure on the house and lot owned by defendant Masur, situated on Lot 7, Block C, as described in item number 1 above. The record reveals that Chaparral was in the business of building and selling homes. Centex was in the concrete business and sold concrete to Chaparral on an open account. At the time the concrete was delivered to each of the three lots or parcels of land in question, Chaparral was the record owner of the lots. After the residence had been constructed on Lot 7,

Chaparral represented that there were no unpaid bills and sold the same to Henry Masur on November 19, 1976. It is undisputed that Masur never owned any interest in Lot 5 and had nothing to do with the construction of the house thereon. While the record is not clear, it appears that Lot 5 was sold to some third party who is not a party to this suit.

The record shows that in attempting to perfect its statutory lien on Lot 7, Centex filed two mechanic's lien affidavits with the County Clerk of Travis County on December 16, 1976. Both of the lien affidavits appear to be identical except for the fact that one recites that Chaparral and Fred Dalton were the owners of Lot 5 and Lot 7, while the other recites that Henry Masur was the owner of Lot 5 and Lot 7. Both lien affidavits recite that Centex was asserting a lien for the sum of $804.83 for concrete furnished to "Lot 5 *and* Lot 7," Block C, West Ridge Estates, a subdivision of Travis County, Texas. (Emphasis supplied.) The record shows without dispute that Lot 5 and Lot 7 are not contiguous, being separated by an intervening lot.

■ Thus we are presented with a situation where a lien claimant has attempted to fix a statutory lien on two noncontiguous lots or parcels of land and now seeks a judgment foreclosing a lien on one of the parcels. The question to be determined is whether or not, under such circumstances, the statute can be held to confer a lien on either one of the two tracts or parcels of land which are not contiguous. We are of the opinion that the question must be answered in the negative.

Article 5452, paragraph 1, Tex.Rev.Civ. Stat.Ann. (Vernon's Supp.1978), gives one who may furnish materials to erect or repair any house, building or improvement a lien upon " . . . such house, building, fixtures, improvements . . ." and on the " . . . lot or lots of land necessarily connected therewith . . ." Article 5458, Tex.Rev.Civ.Stat.Ann., provides:

"If this lien is against land in a city, town or village, it shall extend to or into the lot

or lots upon which such house, building or improvement is situated, or upon which such labor was performed; and if the lien is against land in the country, it shall extend to and include fifty acres upon which such house, building or improvements are situated, or upon which such labor has been performed . . ."

In the early case of *Guaranty Sav. Loan & Investment Co. v. Cash,* 99 Tex. 555, 91 S.W. 781 (1906), the Supreme Court of this state had occasion to address itself to the problem of whether our mechanic's lien statutes could be construed to confer a lien upon three houses and lots for the whole price of the work and material furnished where the lots were not contiguous. In holding that such a lien would not be in compliance with the statute, the court said at page 782:

"The leading purpose running through these and the other provisions of the statute is to secure persons furnishing labor or materials in improving land by a lien upon that into which the labor or material has entered; i. e., the structures and the land to which they are attached. . .

Evidently the statute contemplates one improvement, constituting an entirety, to be affected by the lien to secure the value of the work, material, etc., which made it, and not that one improvement is to be charged with the cost of an entirely different one."

The court in that case, however, went on to point out that where different lots or tracts of land are contiguous, and are treated as a single tract, the lien statutes do not require the lien affidavit to stipulate on which tract the material was used or the value of the material used on each tract. In that instance the lien attaches to all lots and it would be unreasonable to require a party who furnishes materials in such case to ascertain how much material is placed in each house, because this would be a matter under the control of the owner of the property which was improved. *Lyon v. Logan,* 68 Tex. 521, 5 S.W. 72 (1887); *Oil Field Salvage Co. v. Simon,* 140 Tex. 456, 168 S.W.2d 848 (1943).

In the instant case the undisputed proof shows that the lots on which appellant sought to affix a lien were not contiguous but were separated by an intervening lot. It follows that the lien is not in compliance with the statute and for that reason the same is not subject to an order of foreclosure. The record is such that the trial court would have been justified in denying a foreclosure on such theory and therefore the trial court's ruling denying a foreclosure on the alleged statutory lien must be sustained.

■ This brings us to the question of whether appellant was entitled to a foreclosure of a constitutional lien as provided for in Article 16, sec. 37 of the Texas Constitution. The lien given a materialman by the Constitution exists independently of any legislative act and is self-executing. *Strang v. Pray,* 89 Tex. 525, 35 S.W. 1054 (1896); *Wood v. Barnes,* 420 S.W.2d 425, 429 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.).

In order to establish a constitutional lien on Lot 7, appellant had the burden of proving the value of the concrete supplied to that lot so that the court would be able to order a foreclosure for the specific amount due and owing on that particular lot. In our view appellant failed to discharge its burden of proving the value of the concrete attributable to Lot 7 as distinguished from Lot 5.

The evidence shows that the concrete was delivered by Centex's trucks on August 13, 1976. Appellant offered in evidence five delivery tickets showing that five loads of concrete were delivered on that date to "Lot 5 *and* 7." (Emphasis supplied.) (Note that the mechanic's lien filed says "Lot 5 and Lot 7.) In each instance, Chaparral's representative initialed the delivery tickets showing that the concrete had been received. The evidence shows that the total value of all the concrete delivered on the delivery slips reciting that the concrete had been delivered to "Lot 5 and 7" amounted to the sum of $804.83. The delivery tickets do not show what part of the concrete was delivered to Lot 5 and what part was delivered to Lot 7.

In an effort to prove that the entire amount of the concrete was delivered to Lot 7 and none of it was delivered to Lot 5, appellant called as a witness Doug Monzingo, the credit manager for Centex. He testified that even though the delivery tickets showed that the concrete was delivered to both Lots 5 and 7, the entire amount of the concrete was actually delivered and used in the improvements on Lot 7. However, when asked how he knew this to be a fact, he testified that this is what his truck drivers told him. None of the truck drivers were called as witnesses. Obviously the testimony of the credit manager amounted to nothing more than rank hearsay and for that reason it was not probative and did not establish that the entire amount of the concrete was used to improve Lot 7. Thus there is no proof that the entire amount of the concrete was attributable to Lot 7 and consequently the trial court would not have been authorized to enter an order foreclosing the constitutional lien on Lot 7 for such amount. While the proof offered by appellant might have been sufficient to show that some amount of concrete was used in improving Lot 7, the proof is not sufficient to show that the entire amount was used on Lot 7 and none was used on Lot 5. In the absence of any findings of fact or conclusions of law, we must presume, in support of the judgment, that the trial court rendered judgment on that theory and denied a foreclosure of the constitutional lien on that basis.

Appellant has no point of error complaining of the judgment on the ground that the trial court erred in denying it a judgment in personam against appellee Masur. Any error of the trial court in this regard must be considered as having been abandoned and waived. Rule 418, Tex.R.Civ.P.

The judgment of the trial court is affirmed.