**David W. UPHAM et al., Appellants,**

v.

**BOAZ WELL SERVICE, INC., Appellee.**

No. 16319.

Court of Civil Appeals of Texas.

Fort Worth.

April 20, 1962.

Rehearing Denied May 18, 1962.

George M. Ritchie, Gault & Varnell, and Duncan Gault, Mineral Wells, for appellants.

John W. Moore, Jacksboro, Jennings, Montgomery & Dies, and Elton M. Montgomery, Graham, for appellee.

MASSEY, Chief Justice.

By judgment entered as a default judgment in behalf of plaintiff Boaz Well Service, Inc., on February 4, 1961, there was a decree purporting to establish *in personam* liability for $9,690.50, plus $3,230.17, amounting to a total of $12,920.67, against Ida I. Upham, a widow, and against a trust estate created under the authority of the will of her deceased husband, Chester R. Upham.

We take occasion to state the foregoing in connection with our interpretation and construction of the judgment, as same is to be regarded as an *in personam* judgment, because of the language found in paragraph three of the decree of the trial court, viz: "The will of Chester R. Upham, deceased, provides that a majority of the Trustees therein named shall have and enjoy all of the powers and authority conferred on all of them; that there are a total of five such trustees and three of them, i. e., David W. Upham, Betty Upham Buffum and N. T. Hines are parties to this suit, and therefore represent the testamentary trust of Chester R. Upham, deceased; that *this court has jurisdiction of such trust, jurisdiction of the person of Ida I. Upham,* and jurisdiction in rem of all of the defendants' undivided interests in and to the oil and gas leasehold estates hereinbefore identified; and that *this judgment is to be*

*construed and enforced only with reference to such jurisdictional findings."* (Emphasis Supplied.)

The same judgment purported to establish in rem liability against and an interest and right of foreclosure in and to the oil and gas leasehold estate belonging one-half to Ida I. Upham and one-half to the aforesaid Upham trust.

We have concluded that the judgment is good and to be sustained only in so far as it purports to have established *in personam* liability against Ida I. Upham. In all other respects the judgment is erroneous and is reversed.

The appeal is by writ of error. By the pleadings of plaintiff Boaz Well Service, Inc., it would appear that Ida I. Upham, surviving widow of Chester R. Upham, was sued individually, along with the surviving children of said defendant and the deceased. These surviving children were C. R. Upham, Jr., David W. Upham, and Betty Upham Buffum. Betty was a married woman, and her husband was joined as a party defendant. Said surviving children were also sued as "trustees" under the will of Chester R. Upham, deceased. Bernard Jackson and N. T. Hines were sued as additional "trustees" under the same will. As diclosed by the statement of facts made by a court reporter at the time the case was tried and default judgment rendered, the plaintiff proved that all of the aforesaid deceased's interest in the realty, of which he died seized and possessed, passed in trust to five trustees, being those above indicated. The beneficiaries of the trust were the children, born or to be born, of C. R. Upham, Jr., David W. Upham, and Betty Upham Buffum. Ida I. Upham owned one-half of the interest in all of said realty, the whole thereof having constituted community property of herself and the deceased. From the proof introduced it was made clear to the trial court that C. R. Upham, Jr., David W. Upham, and Betty Upham Buffum were interested in said realty in the capacity of trustees only, none being interested as an individual own-

ing title. The specific provisions made by the judgment entered by the trial court are thus clarified, in view of this explanation of the evidence. Although the plaintiff's pleadings sought *in personam* judgment against the three children of the deceased as well as against Ida I. Upham, deceased's widow, they did not obtain such character of judgment against them. This is our interpretation of the judgment.

Plaintiff never did obtain service of citation upon trustee Bernard Jackson. Although the trial court, at time judgment was entered, was of the opinion that valid service had been obtained upon David W. Upham, it is not a question on the appeal but that the purported service was invalid, and David W. Upham was never properly brought into court. Service was obtained upon C. R. Upham, Jr., and an answer was filed by him, but plaintiff dismissed as to him, as well as to Bernard Jackson, so that at time of the hearing on default judgment jurisdiction was held by the court over the following: Betty Upham Buffum, in her individual capacity and also as a trustee of the Upham estate; N. T. Hines, in the capacity of trustee; and Ida I. Upham, in her individual capacity. As indicated, we do not construe the judgment under attack to have awarded an *in personam* judgment against Betty Upham Buffum. As will be hereinafter discussed we have concluded that the *in personam* judgment against the trust was improperly rendered, and the condition of the lien instruments filed inhibited propriety of any *in rem* judgment.

In the petition for writ of error to this court the beneficiaries of the trust were made parties, along with the three children of the deceased Chester R. Upham, in their individual capacities and also as trustees under his will, plus Bernard Jackson and N. T. Hines, trustees under said will. Also joining as a petitioner was Ida I. Upham, widow of the deceased. Plaintiff contests the propriety of the joinder of parties who were not before the trial court, particularly as applied to the trust beneficiaries. We

believe that any decision upon the matter of propriety of joinder would be immaterial in view of our conclusions as to proper action of affirmance or reversal. Therefore we will not discuss the question. Collectively all parties complainant will hereinafter be referred to as petitioners.

The realty of which Chester R. Upham died seized and possessed as to an undivided one-half interest, (and as to which the other one-half interest was and continued to belong to Ida I. Upham, surviving widow) consisted in various oil and/or gas leasehold estates in Wise County, Texas. The names by which said leases were known were: Schilling, Whitten, and Hunter-Holbrook. In neither the pleadings of plaintiff Boaz Well Service, Inc., nor in the evidence adduced upon the trial were these leases alleged or shown to be or have been operated as a unit, or that they were adjacent. In the case of the Whitten lease the same was comprised of two separate tracts, and in the Schilling lease of three separate tracts. In the case of separate tracts under one lease it would appear that a proper presumption of law would be that all of said separate tracts were or would be operated and developed as a unit, under the lease of which they were a part, but the presumption would be to the contrary in the case of separate leases, and that pleading coupled with proof, and in any event pleading, would be essential to validity of a provision in a default judgment which purported to foreclose a statutory lien, properly existing as a burden upon one lease, as against another lease on which the lien did not unquestionably constitute a like burden. The point of error raising the matter, although proper to be sustained, could be cured by a reformation of the judgment should any part of the *in rem* judgment be sustained. We have, however, concluded that no judgment of that character should have been rendered.

At the risk of unduly lengthening this opinion we nevertheless will copy the invoices which were made a part of the plaintiff's "Affidavit Fixing Liens" in total amount of $9,690.50 against all three of the foregoing leases, filed for record in Wise County, Texas, Volume 11, Page 501 of the Mechanic's Lien Records of said County on August 31, 1960, to-wit:

BOAZ        UNIT # 11
Drilling & Service
Box 269
GRAHAM, TEXAS

TO: C. R. UPHAM, ET AL.     Date MARCH 31, 1960

Lease: SCHILLING # 1     Invoice No. 115

Moving on and off of location, rigging up and tearing down, pulling and running tubing, treating, testing, swabbing, and bailing.

| | |
|---|---:|
| MACHINE, 120 hrs. @ $13.00 | $1,560.00 |
| EXTRA LABOR, 50 hrs. @ $2.00 | 100.00 |
| SWAB CUPS, 4–5½" @ $10.20 | 40.80 |
| SWAB CUPS, 36–2" Simplex @ 75¢ | 27.00 |
| OIL SAVER RUBBERS, 1–3/4" @ $2.25 | 2.25 |
| OIL SAVER RUBBERS 1–9/16" @ $1.50 | 1.50 |
| TWO TRUCKS, 6 hrs. @ 17.25 | 103.50 |
| PERMIT, Texas Highway Dept. | 5.10 |
| | $1,840.15 |

BOAZ      UNIT # 11
Drilling & Service
Box 269
GRAHAM, TEXAS

TO: C. R. UPHAM, ET AL.      Date APRIL 11, 1960

Lease: SCHILLING # 1      Invoice No. 329

Moving on and off of location, rigging up and tearing down, pulling and running tubing, treating, swabbing and testing.

| | |
|---|---:|
| MACHINE, 49 hrs. @ 13.00 | $ 637.00 |
| EXTRA LABOR, 32 hrs. @ $2.00 | 64.00 |
| SWAB CUPS, 12–2″ Simplex @ 75¢ | 9.00 |
| OIL SAVER RUBBERS, 1–9/16″ @ $1.50 | 1.50 |
| | 711.50 |

---

BOAZ      UNIT # 11
Drilling & Service
Box 269
GRAHAM, TEXAS

TO: C. R. UPHAM, ET AL.      Date APRIL 21, 1960

Lease: WHITTON # 2      Invoice No. 343

Moving on and off of location, rigging up and tearing down, logging, perforating, drilling, running tubing, treating, swabbing and testing.

| | |
|---|---:|
| MACHINE, 83 hrs. @ $13.00 | $1,079.00 |
| EXTRA LABOR, 16 hrs. @ $2.00 | 32.00 |
| SWAB CUPS, 1–5½″ @ $10.20 | 10.20 |
| SWAB CUPS, 12–2″ Simplex @ 75¢ | 9.00 |
| OIL SAVER RUBBERS, 2–9/16″ @ $1.50 | 3.00 |
| TWO TRUCKS, 6 hrs. @ $17.25 | 103.50 |
| PERMIT, Texas Highway Dept. | 5.10 |
| | $1,241.80 |

**BOAZ**
Drilling & Service
Box 269
GRAHAM, TEXAS

TO: C. R. UPHAM, ET AL.   Date MAY 5, 1960

Lease: WHITTEN # 2   Invoice No. 367

---

Moving on and off of location, rigging up and tearing down, drilling and circulation.

| | |
|---|---:|
| MACHINE, 32 hrs. @ $12.00 | $ 384.00 |
| TRUCK, 6 hrs. @ $9.75 | 58.50 |
| | 442.50 |

---

**BOAZ**   UNIT # 11
Drilling & Service
Box 269
GRAHAM, TEXAS

TO: C. R. UPHAM, ET AL.   Date MAY 5, 1960

Lease: WHITTEN # 2   Invoice No. 366

---

Moving on and off of location, rigging up and tearing down, swabbing, drilling, logging, perforating and fishing.

| | |
|---|---:|
| MACHINE, 204 hrs. @ $13.00 | $2,652.00 |
| EXTRA LABOR, 299 hrs. @ $2.00 | 598.00 |
| SWAB CUPS, 3–5½″ @ $7.65 | 22.95 |
| TONGS, 59 hrs. @ $5.50 | 324.50 |
| PERMIT, Texas Highway Dept. | 5.15 |
| TRUCKS, 11 hrs. @ $17.25 | 189.75 |
| WHITSETT PUMP | 300.00 |
| | $4,092.35 |

BOAZ UNIT # 11
Drilling & Service
Box 269
GRAHAM, TEXAS

TO: C. R. UPHAM, ET AL.      Date JUNE 24, 1960

Lease: HUNTER HOLBROOK # 1      Invoice No. 445

Movng on and off of location, rigging up and tearing down, logging, perforating, running tubing, swabbing, treating and testing.

| | |
|---|---:|
| MACHINE, 80 hrs. @ $13.00 | $1,040.00 |
| EXTRA LABOR, 16 hrs. @ $2.00 | 32.00 |
| SWAB CUPS, 2–5½" @ $10.00 | 20.40 |
| SIMPLEX CUPS, 144–2" @ 75¢ | 108.00 |
| OIL SAVER RUBBERS, 9 Sets 9/16" @ $1.50 | 13.50 |
| TWO TRUCKS, 8 hrs. @ $17.25 | 138.00 |
| TWO HIGHWAY PERMIT, Texas Highway Dept. | 10.30 |
| | $1,362.20 |

———◆———

■ Petitioners' second point of error reads as follows: "The affidavit attempting to establish mechanic's liens on the oil and gas leaseholds fails to state the date or dates of alleged performance by the plaintiff and to itemize sufficiently the alleged services. Therefore, such affidavit does not create valid mechanic's liens, subject to foreclosure. The trial court erred in foreclosing such purported liens". We have concluded that the point of error should be sustained.

It is not a question but that the plaintiff was an original contractor within the intent of V.A.T.S. Title 90, "Liens", Ch. 3, "Oil and Mineral Property", Art. 5476a "Securing lien; contents of affidavit". It seems clear, however, that the work reflected by the face of the invoices, filed as part of plaintiff's affidavit of lien, covered certain work agreed to be done in consideration of the payment of a sum which would not be ascertained until performed. The case, therefore, is not such as discussed and considered by the Court in Hemphill v. Gleason, 1925 (Tex.Civ.App., Fort Worth), 272 S.W. 275, error refused. It was there held that an affidavit purporting to fix a lien of an origi-nal contractor, which was a statement in the aggregate for material and labor furnished in constructing oil rigs, was sufficient in view of the fact that " '* * * when an entire job is done under contract, the same reason and necessity do not exist for giving the various items of work or material as would exist in a case where there was no express contract, under which uncertain work is to be done for a sum certain.' " From cases discussed in the opinion it seems clear that distinction is to be made in instances where the lien affidavit discloses that there was a specific price or total consideration agreed to be paid by him against whose property the lien was filed, and that in such instances there would be no reason or occasion to itemize the materials and/or work, date delivered or performed, etc., such having become immaterial in view of the nature of the contract.

Under the circumstances of this case we do not believe to have been satisfied the requisites of Art. 5476a "Securing lien; contents of affidavit", that the statement fixing the lien, verified by affidavit, set forth " * * * the amount claimed and the items

thereof, the dates of performance or furnishing, * * *", etc. Here it would be prerequisite to the validity of the plaintiff's purported lien that he identify the particular day or days upon which the labor was performed. The contract upon which the plaintiff performed was verbal and its representation of the terms and specifications of the contract and the amount and value of the work and materials furnished would be ex parte as applied to its affidavit of lien, and therefore should be so specific and certain as to advise the owner of the property, other lien creditors, if any, and all persons interested, of the particulars of the demand sought to be enforced, so that, if they desire, they may be prepared to contest the same. See McClellan v. Haley, 1923 (Tex.Com.App.), 250 S.W. 413. See also Ball v. Davis, 1929, 118 Tex. 534, 18 S.W.2d 1063, and the modification thereof in Oil Field Salvage Co. v. Simon, 1943, 140 Tex. 456, 168 S.W.2d 848, 853.

The effect of our foregoing holding would be to invalidate the *in rem* judgment entered in the trial court. It would not affect the *in personam* character of the judgment.

■ As heretofore mentioned David W. Upham, one of the petitioners, was deemed by the trial court to have been subject to its jurisdiction. He was a non-resident. The state of his residence was California. In relation to the citation necessary in such cases it is proper to refer to Texas Rules of Civil Procedure, rule 107 "Return of Citation", and T.R.C.P. 108, "Defendant Without State". Therefrom it appears mandatory that the return of the person making service upon such a defendant show that he is in no manner interested in the cause in question; that a true copy of the citation with a true and correct copy of the plaintiff's petition attached thereto was delivered to the within named defendant in person; and such return must be sworn to. The return made on the citation purportedly served upon David W. Upham was fatally defective and insufficient to support

default judgment as against him, either in his individual capacity or as trustee. Jurisdiction over him was never acquired.

The proof which the plaintiff chose to introduce upon the default judgment disclosed that as an individual Mrs. Betty Upham Buffum had no title or possessory interest in and to any part of her deceased father's real estate. She was shown by plaintiff's evidence to be one of the five trustees under the will of the deceased. The realty covered by the trust was that in which her children (born and/or unborn) had or would be entitled to an interest as beneficiaries of the trust, but was not her separate property. The services, labor, or materials furnished by the plaintiff in connection with the leasehold estates could not have been for the sole benefit of any separate property belonging to her. She was a married woman. She had the perfect defense of coverture, but did not so plead. Not having plead it, the defense was waived and the proof availed her naught. Had judgment been taken against her as an individual, *in personam,* it would have been valid. We mention this despite our opinion, previously expressed, that the judgment did not amount to an *in personam* judgment against her.

The question exists as to whether the judgment, as taken *in personam* against the trustees of the Upham estate, may be accorded validity. It is to be remembered that the only trustees against whom the judgment might be considered to have been validly taken were Betty Upham Buffum and N. T. Hines. One must remember that the correct question is whether a valid judgment was entered establishing the legal liability of the *trust.* In the present instance we do not consider that a valid judgment was entered so establishing such legal liability, and the point of error raising the same is sustained.

■ ˙ Trustees constitute but one person in law and like executors, etc., must join

in a suit concerning their trust. Similarly, where several trustees hold property jointly, all are ordinarily necessary parties to an action concerning it. 90 C.J.S. Trusts § 367, p. 671 "(Actions by or against third persons)—Joinder and Intervention". When two or more trustees hold property jointly, both or all are necessary and indispensable parties to any action concerning it unless separate authority is given by statute or by the instrument creating the trust. Bitker v. Hotel Duluth Co., 1936 (C.C.A. 8th) 83 F.2d 721, certiorari denied, 299 U.S. 577, 57 S.Ct. 41, 81 L.Ed. 425. We hold that in so far as the effect of the judgment might be considered to have any effect upon the trust estate it should be annuled, an insufficient number of trustees having been brought into court. The *in personam* judgment against the trust, or against its trustees, is reversed.

From what we have heretofore stated, the entire judgment is to be reversed and the cause remanded as applied to all parties save and except the existence of the same against Ida I. Upham, as a judgment *in personam*. In said respect, and to that extent, we have reached the conclusion that the judgment should be affirmed. Only by sustaining the first point of error presented in the brief of the petitioners would it be proper to set aside the *in personam* judgment against Mrs. Upham. We believe that the point of error should be overruled.

Point of error number one is predicated upon the petitioners' contention that plaintiff's cause of action is solely one of sworn account, and that the default judgment was erroneously rendered thereon because the affidavit to the account failed to state that the claim asserted was "within the knowledge of the affiant" just and true, that it was due, and that all just and lawful offsets, payments, and credits had been allowed,—as required by T.R.C.P. 185, "Suit on Sworn Account."

Plaintiff did not content itself to establish its claim by the mere introduction of the account attached to and made a part of its pleadings. Plaintiff's President took the stand and by his oral testimony established prima facie the fact that materials and services, reflected on the account and the invoices, were delivered and performed. Further testimony was to the effect that the amounts of the account, as thereon shown, were reasonable and just. Not having been denied by the answer of any party before the court at time of the hearing, plaintiff's allegation that the defendants had contracted for the performance of services and delivery of materials, by and through an agent, stood proved by the pleadings. The evidence requisite to proper entry of default judgment was actually introduced. The suit was for debt founded in breach of contract to pay upon completion of performance by plaintiff. The amount for which recovery was sought was unliquidated and therefore necessary to be proved as a prerequisite to proper entry of judgment by default. Had the plaintiff's account complied with all the requisites of T.R.C.P. 185, and the affidavit not subject to the complaint thereof made by petitioners, its introduction upon the trial would have been sufficient in and of itself to support the judgment. Plaintiff did not so confine itself, but completed its prima facie case by the introduction of additional testimony. The whole of the proof introduced did support the *in personam* judgment against Ida I. Upham.

Judgment *in personam* against Ida I. Upham is affirmed. In all other respects the judgment is reversed and the cause remanded to the trial court.