### In re CLEAR FORK ENERGY RESOURCES, INC., Debtor.

A.M. MANCUSO, Trustee for Clear Fork Energy Resources, Inc., Plaintiff,

v.

Jack Carl STIVERS and Danny Keith Stivers, dba Stivers Properties; Graham Acidizing, Inc., McMillan Industries, Inc., dba M & F Well Service; McMillan Industries, Inc., dba Breckenridge Tank Trucks; Gough Tank Trucks, dba Waco Tank Lines; Rogers Construction Company; Rogers Supply & Equipment; Graham Mud, Inc., Halliburton Company; M.R. Johnson, Inc., dba Johnson Tank Trucks; Barker and Bratton Steel, Inc.; D-K Pipe & Equipment; Iablo Drilling, Inc.; Al G. Moore; Ranger Operatin Co.; Oil Well Drilling, Inc.; Commercial Credit Services Corp.; Preston State Bank; Tax Assessor-Collector, Young County, Texas; Graham I.S.D.; and Homer Alexander, Defendants.

Bankruptcy No. 382–01741–F.
Adv. No. 383–0892.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Nov. 2, 1984.

D. Michael Lynn, Andrea Nation, Moore & Peterson, Dallas, Tex., for Trustee.

Richard Glaser, Marty Price, Dallas, Tex., for Commercial Credit.

Jess Turner, Graham, Tex., for Gough Tank Trucks, Rogers Supply & Equipment, Rogers Const. Co. and Stivers Properties.

David Knight, Graham, Tex., for Barker & Bratton Steel, Inc. and D-K Pipe & Equipment.

Steve Crawford, Montgomery Law Firm, Graham, Tex., for Al G. Moore and Kenotex, Inc.

William G. Thompson, Thompson & Cook, Breckenridge, Tex., for McMillan Industries, Inc. (M & F Well Service, Breckenridge Tank Trucks).

Dwayne Todd, Bank Officer, Preston State Bank, pro se.

Richard W. Ward, Palmer, Palmer & Coffee, Dallas, Tex., for Al G. Moore, deceased.

G.D. Hinson, Graham, Tex., Barbara Miller, Vineyard, Drake & Miller, Dallas, Tex., for Estate of Al Moore.

McCracken, Andrews & Curbo, Graham, Tex., for M.R. Johnson, Inc. and Oil Well Drilling, Inc.

Richard Mize, Duncan, Okl., for Halliburton Co.

Donald Sweatt, Graham, Tex., for Graham Acidizing, Inc. and Tommys Well Service.

Homer Alexander, pro se.

Howard Perdue, Perdue, Brandon & Blair, Fort Worth, Tex., for Young County Tax Assessor and Graham ISD.

Mike Ederer, Cooper, Tex., for Homer Alexander.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

On May 22, 1984, the Court held a hearing on the Motion for Hearing on Validity of Mechanic and Materialmen's Liens of Graham Mud, Inc., Ranger Operating Company and Diablo Drilling, Inc. At the conclusion of the hearing, the Court entered its oral findings of fact and conclusions of law on the record and entered an Order on June 18, 1984 summarizing its ruling. This Memorandum Opinion is to supplement the Court's oral findings and conclusions and Order of June 18, 1984.

### Findings of Fact

Clear Fork Energy Resources, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 28, 1982. The United States Trustee for the Northern District of Texas appointed A.M. Mancuso as Trustee for the Debtor. The property in the Debtor's estate included an oil and gas lease for a tract of 320 acres known as the Dysinger lease. Although legal title to the property rested with a third party, the Trustee asserted equitable title to the Dysinger lease.

Prior to the commencement of the Chapter 11 case, the Debtor had incurred certain financial obligations to a variety of parties

for services and materials that they provided to the Debtor in drilling a well on the Dysinger lease. When the Debtor failed to compensate these parties, some attempted to file mechanic's and materialmen's liens against the Debtor's property. The three lien claimants involved in the instant matter, Ranger Operating Company ("Ranger"), Diablo Drilling, Inc. ("Diablo") and Graham Mud, Inc. ("Graham"), filed lien affidavits that contained acknowledgements attesting only to the verity of the signatures on the documents instead of jurats reflecting a sworn statement as to the validity of the contents of the documents.

The Trustee instituted a complaint to sell the Debtor's interest in the Dysinger lease to a third party, Richardson Energy Corporation, free and clear of all liens, claims, and encumbrances. One of the lien claimants, McMillan Industries, Inc. ("McMillan"), filed an answer in which it sought to have the Court declare the Ranger, Diablo, and Graham liens, among others, invalid because they did not comply with the statutory requirements under Texas law for mechanic's and materialmen's liens. The Court approved the sale of the Dysinger lease on August 31, 1983, for cash and a production payment. Assuming collection of the production payment, all liens asserted by the lien claimants could be paid in full. However, absent collection of the production payment, the asserted liens and other claims would exceed the purchase price. The Court did not, at that time, rule on the validity of the liens.

■ On November 8, 1983, Ranger, Diablo, and Graham ("Movants") moved for a hearing on the validity of their mechanic's and materialmen's liens. The Trustee responded that the liens were invalid for failing to comply with the applicable Texas statutes because: (1) the affidavits lacked jurats; (2) the affidavits did not state that they were based on personal knowledge; and (3) for the Ranger and Graham liens,

the affidavits did not list the owner of the land or leasehold. The Trustee later conceded this last point at hearing and argued instead that the Debtor's lack of legal ownership of the property precluded a valid lien encumbering the Dysinger lease. The matter was originally set for hearing on January 20, 1984. At that time the Court determined that other lienholders were similarly situated and should be given an opportunity to be heard concerning the issues raised by the Trustee. The Court directed the parties to submit briefs and to give notice to all other similarly situated lienholders in this matter in preparation for hearing that took place on May 22, 1984. At that hearing the Movants presented testimony to the effect that the affidavits were sworn to despite the absence of the jurats. However, this Court will not consider parol evidence to expand a lien affidavit to cure a defect; such evidence must appear on the face of the written instrument.

### Conclusions of Law

■ The laws of Texas unequivocally require a jurat in order to establish a valid mechanic's and materialman's lien. When securing a lien, a party must submit "a statement verified by affidavit" containing certain information. Tex.Rev.Civ.Stat.Ann. art. 5476a (Vernon 1958).[1] Texas defines an affidavit as "a statement in writing of a fact or facts signed by the party making it, and sworn to before some officer authorized to administer oaths, and officially certified by such officer under his seal of office." Tex.Rev.Civ.Stat.Ann. art. 23, § 18 (Vernon 1969). The instruments in question here do not constitute affidavits within the meaning of the statute because they only contain acknowledgments, not jurats. See *Taylor v. Rigby*, 574 S.W.2d 833, 837 (Tex.Civ.App.—Tyler 1978, writ refused n.r.e.); *Conn, Sherrod & Co. v. Tri-Electric Supply Co.*, 535 S.W.2d 31, 34 (Tex. Civ.App.—Tyler 1976, writ refused n.r.e.);

---

1. Article 5476a constituted the prevailing statute at the time that the parties filed their mechanic's and materialmen's lien affidavits. Effective January 1, 1984, article 5476a has been recodified as §§ 56.021, 56.022 of the Texas Property Code, but no substantial change in the law has occurred.

*Crockett v. Sampson,* 439 S.W.2d 355, 359 (Tex.Civ.App.—Austin 1969, no writ).

Moreover, Texas law leaves no doubt that an acknowledgment differs from a jurat and that an acknowledgment will not suffice where the law requires a jurat. *See Taylor,* 574 S.W.2d at 837; *Conn, Sherrod,* 535 S.W.2d at 34–35; *Crockett,* 439 S.W.2d at 359–60. Merely reciting in the first paragraph of the statement that the maker swore to the purported affidavit will not salvage the instrument, which remains "fatally defective" because it lacks a jurat. *Crockett,* 439 S.W.2d at 360. Furthermore, the Court will not allow the introduction of extrinsic evidence after the statutory period has elapsed to alter the lien affidavit as it was filed. *See Conn, Sherrod,* 535 S.W.2d at 34. It would be inappropriate for a Federal Court to rule contrary to such clearly established state law requiring jurats and not merely acknowledgments.[2]

In addition to the status of the law requiring jurats, the equitable considerations in this particular case also weigh in favor of declaring the liens invalid. First, the penalty of perjury only attaches to sworn affidavits. To afford a statement that merely contains an acknowledgment a co-equal status with a statement that includes a jurat might result in the indiscriminate filing of frivolous liens because the deterrent of the perjury sanction would not apply to such instruments. Second, to elevate those creditors who failed to follow the statutory requirements to the level of a secured creditor would impair the rights of those creditors who adhered to the statutes by dissipating the pool of funds available for distribution. Denying the validity of the liens does not adversely affect Ranger, Diablo and Graham because they retain their claims; this ruling only declines to grant them the privilege of raising themselves above other unsecured creditors to the status of a secured creditor because they failed to comply with the statutory

requirement of a jurat. Finally, a different decision would contradict the clear Congressional purpose behind § 544 of the Bankruptcy Code in establishing the Trustee as a perfect creditor and a bona fide purchaser for value charged with preventing the enforcement of improperly perfected liens.

2. In its brief the Trustee alleged two additional legal grounds for declaring the liens invalid. The Trustee argued that the law required a showing of personal knowledge of the purported affiant and that the lack of legal ownership by the Debtor precluded the Movants from establishing a lien to encumber the Dysinger lease. The Court rendered no decision on these contentions.