In re **MID–AMERICA PETROLEUM, INC., et al., Debtors.**

**MID–AMERICA PETROLEUM, INC., et al., Plaintiffs,**

v.

**ADKINS SUPPLY, INC., et al., Defendants.**

**Bankruptcy No. 587–50046–11. Adv. No. 587–5017.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

March 1, 1988.

Nicholas Katsonis, Palmer & Palmer, Dallas, Tex., for debtor.

T. Ray Guy, Jenkens & Gilchrist, Dallas, Tex., for FDIC.

J. Robert Forshey, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., for various M & M claimants.

Scotta E. McFarland, Thompson & Knight, Dallas, Tex., for Halliburton Co.

Michael G. Kelley, Hollman, Lyon, Patterson & Durrell, Inc., Odessa, Tex., for Watson and Associates of Midland, Inc.

David L. Patterson, Maxwell, Godwin & Carlton, Dallas, Tex., for WellTech, Inc.

Darrell Smith, Smith & Shackelford, P.C., Midland, Tex., for Linco–Electromatic, Inc.

Darrell W. Moore, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Abilene, Tex., for West Texas Utilities Co.

Neil J. Orleans, Wise, Stuhl, Andres, Orleans & Morris, Dallas, Tex., for Dowell Schlumberger, Inc.

Morris Reese, Jr., Logan, Lear, Gossett, Harrison, Reese & Wilson, San Angelo, Tex., for Falcon Well Service Co.

Walter C. Kellogg, Trustee-in-Bankruptcy, Dallas, Tex., Trustee for MAP.

Daniel C. Stewart, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for trustee.

Harrel L. Davis, III, Grambling & Mounce, El Paso, Tex., for Unsecured Creditors Committee.

## MEMORANDUM OF OPINION

JOHN C. AKARD, Bankruptcy Judge.

Mid–America Petroleum, Inc. (Debtor) was the operator of several oil and gas leases and owned a working interest in wells on each lease it operated. When the Debtor did not make timely payment to parties who furnished labor and materials on these wells, they filed mechanic's and materialmen's liens (M & M liens).[1] Thereafter the Debtor filed for relief under Chapter 11 of the Bankruptcy Code on January 31, 1986. In this proceeding the Debtor contested the validity of several liens.

### JURAT

■ The Debtor objected to the liens filed by Adkins Supply, Inc., J.C. Cazares d/b/a J.C. Sandblasting & Painting, Jimsco, Inc., SMC, Inc., and WellTech, Inc. for the reason that they contained no jurat and, thus, did not comply with Chapter 56 of the Texas Property Code.

In Texas, one who claims a statutory lien in order to be paid for labor or materials in connection with oil and gas activities must file, within a prescribed time, an affidavit in the statutorily prescribed form with the County Clerk in the County in which the mineral property is located. TPC §§ 56.-021, 56.022. Since the statute requires the claimant to file an "affidavit" in order to perfect his lien, the instrument filed must meet the requirements of an affidavit. The statutory definition of an affidavit states:

> 'Affidavit' means a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office.

Tex.Gov't.Code Ann. § 312.011(1) (Vernon Pamph.1987).[2]

An acknowledgment and a jurat are not the same thing. *Crockett v. Sampson*, 439 S.W.2d 355 (Tex.Civ.App.—Austin 1969, no writ). An instrument which does not recite that the necessary oath was administered is not an affidavit. *Gordon v. State*, 29 Cr.R. 410, 16 S.W. 337 (1891). *See also Standridge v. Warrior Constructors, Inc.*, 425 S.W.2d 472 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ). Additionally, where parties claiming M & M liens file instruments for record to which they do not swear and which contain no oath or jurat but only acknowledgments, the instruments are not affidavits and cannot perfect liens. *Perkins Construction Co. v. Ten-Fifteen Corp.*, 545 S.W.2d 494 (Tex.Civ.App.—San Antonio 1976, no writ).

In *Mancuso v. Stivers* (In re Clear Fork Energy Resources, Inc.), 44 B.R. 110 (Bankr.N.D.Tex.1984) Bankruptcy Judge John C. Ford held that an acknowledgment is not sufficient where the law requires a jurat. Merely reciting in the first paragraph of the instrument that the maker swore to the purported affidavit does not salvage the instrument. It remains "fatally defective" because it lacks a jurat. *Id.* at 113 (citing *Crockett, supra*). The *Mancuso* Court also noted that equitable considerations weighed in favor of declaring the liens invalid because perjury only attaches to sworn statements. Thus, giving acknowledged statements co-equal status with those which include jurats, could result in the indiscriminate filing of frivolous liens. Additionally, creditors who adhere to the statutes should not be penalized by allowing secured status to creditors who fail to follow statutory requirements thereby dissipating the pool of funds available for distribution to that class. *Id.*

The Court holds that the M & M liens filed by these claimants are invalid for the reason that the instruments filed contained no jurat.

---

1. Statutory liens against mineral property are governed by Chapter 56 of the Texas Property Code. References to sections of the Property Code will be preceded by TPC.

2. Although an annotated edition of the Texas Government Code was not yet available in print at the time this opinion was written, references to cases under this statute are available under the original statute, Tex.Rev.Civ.Stat.Ann. art. 23 (Vernon, 1969) [Repealed by Acts 1985, 69th Leg., ch. 479, § 224, effective September 1, 1985] along with its 1987 pamphlet supplement.

## DATES OF PERFORMANCE

■ The Debtor objected to the liens filed by C.D. Pump & Equipment, Inc., N.L. Industries, Inc., John Leslie Reynolds d/b/a Reynolds Tank Rental and S & S Applicators, Inc. because the instruments filed did not contain the dates the work was performed or the dates the materials were furnished.

TPC § 56.022 requires a lien claimant's affidavit to include, among other things, "the dates of performance or furnishing." In the case at bar the instruments filed by these claimants contained no dates of performance or furnishing.[3] The instrument filed by Reynolds Tank Rental stated that the claimant provided labor and materials "[u]nder a continuous course from June, 1985." Whether this wording constitutes statutory compliance was specifically addressed in an early case, *Ball v. Davis*, 118 Tex. 534, 18 S.W.2d 1063 (1929). In *Ball*, the Texas Supreme Court held that the instrument filed by the lien claimant did not state the dates and hours of the work performed and, therefore, was defective since the instrument must show on its face substantial compliance with all statutory requirements for validity. *Id.* 18 S.W.2d at 1064. The *Ball* Court concluded that unless the lien affidavit showed that labor was performed, that a certain amount was owed for it, and the date on which the sum became due, the instrument is insufficient to attach a lien to the property. *Id.*

■ In *Upham v. Boaz Well Service, Inc.*, 357 S.W.2d 411 (Tex.Civ.App.—Fort Worth 1962, no writ), the Court found that where a lien affidavit shows a specific price or total consideration was agreed to be paid by the owner, itemization of work and/or materials and the dates delivered or performed would be immaterial. The lien affidavits in the instant case disclosed no such contract. Therefore, a prerequisite to the validity of the lien instruments was identification of the particular day or days upon which the labor was performed or the materials furnished. *Id.* at 418. Dates of performance or furnishing were omitted in the instruments filed by the lien claimants, except Reynolds Tank Rental. However, the instrument filed by Reynolds Tank Rental identified only the first month in which it provided labor and materials. Thus, a third party who might be affected by this lien claim would be unable to determine from the face of the instrument whether it was timely filed. Therefore, the Court holds that the M & M liens filed by these claimants were insufficient to attach to the property in question.

## PROPERTY DESCRIPTION

■ The Debtor objected to the liens filed by Jimsco, Inc., S & S Applicators, Inc., and SMC, Inc. because the description of the property upon which they claimed their lien was incorrect. TPC § 56.022(a)(4) mandates that a lien claimant's affidavit include "a description of the land, leasehold interest, pipeline, or pipeline right-of-way involved." The lien affidavits filed by Jimsco, Inc., and S & S Applicators, Inc. described the property to which their lien attached as "Taylor–Link West S/A Unit, Taylor–Link West Field, Bakersfield, Pecos County, Texas." The affidavit filed by SMC, Inc. described the property as MAP's leasehold interest with improvements held by MAP under an oil and gas lease granted by the University of Texas and then listed the property as certain university wells, Pecos County, Texas. No legal description was given, and no reference was made to any lease on file which contained a legal description. In construing Tex.Rev.Civ. Stat.Ann. art. 5473, the predecessor statute to TPC § 56.001, *et seq.*, one Texas court held the lien will attach only to the lease on which the work was done or material furnished. *Big Six Oil Co. v. West*, 136 S.W. 2d 950 (Tex.Civ.App.—Fort Worth 1940, writ dism'd judgmt cor.). It follows that the leasehold on which the particular work was done and the material furnished should be described with particularity so that a party familiar with the locality can identify the premises to the exclusion of others. *Boots Builders, Inc. v. Hobson Air Condi-*

---

3. Although the instruments filed by C.D. Pump & Equipment, Inc. and N.L. Industries, Inc. referred to attachments, the attachments were not filed.

*tioning, Inc.* (In re Boots Builders, Inc.), 11 B.R. 635 (Bankr.N.D.Tex.1981). In the *Boots Builders* case Bankruptcy Judge Flowers held that where the description in the notice of the lien claim came closer to describing a tract of land other than the one on which the labor and materials were furnished, the lien claimant did not properly perfect its statutory mechanic's lien upon the property in question. *Id.* at 638. It has been held that a description of the land given by describing the oil and gas lease and giving its recording information is a sufficient description. *Youngstown Sheet and Tube Co. v. Lucey Products Co.*, 403 F.2d 135 (5th Cir.1968). The description of the property in the lien affidavit in *Youngstown* case identified the lease by date and place of its recording in the deed records in the county where it was recorded and also referred to the section and block covered by the lease. *Id.* at 144.

In *Continental Supply Co. v. Gillespie*, 269 S.W. 859 (Tex.Civ.App.—Galveston 1925, no writ) the affidavit described the land to which the pipe was delivered as "... certain land, premises and leasehold of land in what is known as the Markham Oil Field, in Matagorda county [sic], Tex., the description of which land and mineral lease thereon is not known to this affiant." *Id.* The Court held this description insufficient to fix a lien on property. *Id.* at 860.

One claimant cited *Moore v. Carey Bros. Oil Co.*, 246 S.W. 1083 (Tex.Civ.App.—Fort Worth 1922) (Moore I) as standing for the proposition that it was not necessary to describe the real estate on which oil well materials were provided.[4] *Moore I* is not applicable to the instant case since it dealt with the sufficiency of the description in a lien affidavit which claimed a lien on personalty only. Even if *Moore I* were applicable, the holding was expressly or impliedly overruled. *See Boots Builders, supra* (citing *First National Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262 (Tex. 1974)).

The Court holds that in order to effect a valid lien against the property in question the claimants must file lien affidavits which contain a description of the land or the lease. The description contained in the lien affidavits of these claimants was insufficient to adequately identify the property on which their lien was claimed. Therefore the M & M liens filed by these claimants are insufficient to attach to the property in question.

■ With respect to the claims of Electric Submersible Pumps, Inc. and WellTech Inc. the lien claimants' affidavits included leases on which they supplied no labor or materials. Therefore, their liens do not attach to those leases and must be reduced correspondingly. *Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341 (Tex.Civ. App.—Eastland 1968, writ ref'd n.r.e.). Since the Court has previously held that WellTech Inc. did not perfect its lien due to the fact no jurat was attached to the instrument, we need not decide what portion of its claim must be reduced. With respect to Electric Submersible Pumps, Inc., the affidavit does not show on which wells services were provided. However, it was stipulated at hearing that Electric Submersible Pump's Invoice No. 5590 in the amount of $30,050.56 was claimed on a well number not contained in any area described in the claimant's lien affidavit. Invoice No. 5637 in the amount of $1,856.95 and Invoice No. 5640 in the amount of $806.95 were also stipulated to be in areas outside the area described in the lien affidavits. Therefore, the amount of the lien will be reduced by the sum of $32,714.46.

■ The Debtor objected to the lien claimed by H2S Specialties, Inc. on similar grounds. There is no evidence in the Court's records that H2S Specialties, Inc. was served with summons in this proceeding. Therefore, the Debtor's objection will be denied.

---

**4.** Four opinions were rendered in *Moore. See also* 248 S.W. 470 (Tex.Civ.App.—Fort Worth 1922) (Moore II), 269 S.W. 75 (Tex.Comm'n App.1925, judgmt adopted) (Moore III), and 272 S.W. 440 (Tex.Comm'n App.1925) (Moore IV).

## CONSTITUTIONAL LIENS

Some claimants asserted they were entitled to a lien under art. XVI § 37 of the Texas Constitution which reads:

> Mechanics, artisans and material men, of every class, have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

■ Persons coming within the terms of the constitutional provisions are not compelled to take any steps to fix the liens as between themselves and the owners. *Ball v. Davis, supra.* In *Ball* the Texas Supreme Court expressly held that drilling an oil well was neither the erection nor repair of a building and that setting the casing in an oil well did not make the casing an "article made" for purposes of the constitutional lien. 18 S.W.2d at 1066. The mechanic's lien claimants cited *Moore III, supra* at n. 4 for the proposition that cementing together the casing for the oil well constituted an "article made" within the mechanic's lien provision of the constitution. This portion of *Moore* was expressly overruled in *Ball, supra* at 1067.[5]

■ The Trustee in bankruptcy and the debtor-in-possession in a Chapter 11 proceeding have the rights of a bona fide purchaser of real property under §§ 544(a)(3) and 1107(a).[6] In that capacity the trustee (debtor) takes free of the constitutional lien. *Boots Builders, supra.* The bona fide purchaser status can be overturned if the trustee (debtor) had constructive notice of the lien. Constructive notice is given by a properly filed M & M lien but not by one which is improperly filed. *McEvoy v. Ron Watkins, Inc.,* (In re Marquee East Investors Ltd.) No. CA–3–87–1874–R, slip op. (N.D.Tex.1987) October 19, 1987 [available on WESTLAW, 1987 WL 45035].

Actual notice of the claim by the debtor prior to becoming a debtor-in-possession under the Bankruptcy Code is irrelevant. *Id.*

■ Adkins Supply asserted a constitutional lien on articles it repaired. However, Adkins Supply introduced no testimony at the hearing concerning repairs performed. The mechanic's lien affidavit filed by Adkins Supply included a number of invoices which showed various items of material furnished, but did not indicate any repairs. In order to claim a constitutional lien for repairs the article must be specifically identified and the repairs described. *Ball, supra.* Adkins Supply failed to do so. Therefore, its claimed constitutional lien must be denied.

■ The assertions by some claimants that they were entitled to equitable liens are equally groundless.

## COVERAGE OF LIENS

MAP owned a working interest in various leases in the Taylor–Link Field. Third parties (Non–Operators) owned the balance of the working interest. The identity of the Non–Operators and the percentage of interest they owned varied from lease to lease. Some Non–Operators were limited partnerships set up to drill and produce the leases of which MAP was the general partner. The Court understands that the limited partnerships were publicly held and that the limited partners and the interest owned by them varied from partnership to partnership.

MAP was the entity which contracted with the claimants. Consequently, when an M & M lien was filed it covered MAP's working interest in the property. Whether the M & M lien covered the portions of the property owned by Non–Operators depends upon recording of the assignments to the Non–Operators, actual notice and, perhaps, other factors. *McCarty v. Halliburton*

---

**5.** The M & M lien claimants also cited *Bovaird Supply Co. v. American Tank Co.,* 29 F.2d 361 (5th Cir.1928). *Bovaird* follows *Moore, supra.* Since federal courts must follow state courts on matters of property law, the Texas Supreme Court decision in *Ball* would have the effect of overruling *Bovaird* as well. *Butner v. United*

*States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), see also, *Boots Builders, supra.*

**6.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to Section numbers are to Sections in the Bankruptcy Code.

*Co.*, 725 S.W.2d 817 (Tex.App.—Eastland 1987, writ ref'd n.r.e.).

The Claimants asserted that MAP, as the operator, was the agent for the Non–Operators and, as a consequence, the interests of the Non-Operators were subject to their liens. This contention cannot be sustained either as a matter of procedure or as a matter of law.

■ As a matter of procedure, MAP instituted this Adversary Proceeding to contest the validity of the M & M liens against its interest in the subject properties. The Non-Operators were not made parties to this action. Consequently, no adjudication of lien claims against their interests in the property may be made in this proceeding.

■ As a matter of law, the Operating Agreement did not make MAP the agent for the Non–Operators.[7] The Operating Agreement appointed MAP as the operator and in Article V. gave MAP the authority to conduct, direct and fully control all operations on the property. There were limitations, such as the limitation on the settlement of claims over $10,000.00 in Article X., and requirements to secure approvals before commencing major operations. Each working interest owner had a right to take his share of production in kind rather than money. Article VI.C. The parties were to bear costs and own equipment in the same percentages they owned in the leases. Article III.B. The liability of the parties was several, not joint, and it was specifically stated that the operating agreement did not constitute a partnership. Article VII. The operator could not incur obligations in excess of $20,000.00 without consent of the Non-operators. Article VII. D.3. The Amendment did allow the operator, as agent for the Non–Operators, to pay royalties. The Texas Supreme Court stated:

> Joint owners of an oil and gas lease may, without forming a partnership, contract for the operation of the leases by one of them and for the operator in the event of success to pay the other joint owner one-half of the proceeds of the sale of the oil and gas less the expense of finding it, without creating a joint adventure or a mining partnership.

*Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 722 (1945). The operating agreement did not give the operator the right to contract in the name of the Non–Operators. The Non-Operators' only obligation was to pay their shares of the costs of the well to the operator. *Id.* See also, *U.S. Truck Lines v. Texaco, Inc.*, 337 S.W.2d 497 (Tex. Civ.App.—Eastland 1960, writ ref'd) (holding that rights of parties to oil and gas lease are several, not joint and that operator and non-operators were not partners).

This Court has no jurisdiction in this bankruptcy proceeding to determine contests concerning the validity or coverage of M & M liens as between the lienholders and the Non–Operators. However, if it did, it would be inclined to follow the Texas Supreme Court's decision in *Bethlehem Supply Corp. v. Wotola Royalty Corp.*, 140 Tex. 9, 165 S.W.2d 443, 445 (1945) in which the Court stated:

> We think that it is the settled law of this State that the lien accorded by … [Tex. Prop.Code Ann. §§ 56.001–56.003] … extends only to the property of the person under whose auspices the labor or material is furnished; it does not authorize the fixing of liens upon the property of third persons.

*See also, Meg Petroleum Corp. v. Halliburton Services,* (In re Meg Petroleum Corp.), 61 B.R. 14, 18 (Bankr.N.D.Tex. 1986).

Order accordingly.

---

7. The operating agreement in question is dated February 1, 1984. It is the American Association of Petroleum Landmen Form 610–1077 entitled "Model Form Operating Agreement." Various changes were made in the printed form. It was amended by Amendment to Operating Agreement effective November 1, 1984 and by Second Amendment to Operating Agreement which is not dated but recited to be effective February 1, 1984. The Operating Agreement of February 1, 1984 and the amendments are collectively referred to as the Operating Agreement.